Argued and submitted June 20, 1991, resubmitted In Banc April 25, reversed and remanded for new trial August 12, reconsideration denied October 21, petition for review allowed November 24, 1992 (314 Or 727)

# STATE OF OREGON,
*Respondent,*

*v.*

# LAWRENCE ELLIS TRENARY,
*Appellant.*

## (89CR2991; CA A65385)

836 P2d 739

Louis R. Miles, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender, Salem.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

De MUNIZ, J.

Durham, J., specially concurring.

Warren, J., concurring in part; dissenting in part.

Deits, J., concurring in part; dissenting in part.

Edmonds, J., concurring in part; dissenting in part.

Riggs, J., dissenting.

## De MUNIZ, J.

Defendant appeals his conviction for driving under the influence of intoxicants (DUII). ORS 813.010. He makes two assignments of error. He claims that the trial court erred when it denied his motion to suppress the results of field sobriety tests that he voluntarily took without first being advised of the consequences of refusal. He also claims that the results of his breath test should have been suppressed, because his right to consult a lawyer before taking the test was violated. We reverse and remand for a new trial.

On December 20, 1989, Oregon State Police Officer Foust stopped defendant, suspecting that he was driving while under the influence of an intoxicant. Foust advised defendant of his *"Miranda* rights,"[1] then asked him to perform some field sobriety tests.[2]

ORS 813.135 provides, in part:

"Before [field sobriety] tests are administered, the person requested to take the tests shall be informed of the consequences of refusing to take or failing to submit to the tests under ORS 813.136."

ORS 813.136 provides:

"If a person refuses or fails to submit to field sobriety tests as required by ORS 813.135, evidence of the person's refusal or failure to submit is admissible in any criminal or civil action or proceeding arising out of allegations that the person was driving while under the influence of intoxicants."

Foust never informed defendant of the consequences of refusing to take the tests. Nonetheless, defendant voluntarily took them and "did very poorly."

■ The first issue is whether Foust's violation of ORS 813.135 requires suppression of the test results. ORS

---

[1] Article I, section 12, of the Oregon Constitution requires that a suspect in custody, or other sufficiently compelling circumstances, be given *"Miranda-*like" warnings before being interrogated. *State v. Carlson,* 311 Or 201, 204, 808 P2d 1002 (1991); *State v. Smith,* 310 Or 1, 7, 791 P2d 836 (1990); *see Miranda v. Arizona,* 384 US 436, 472-73, 86 S Ct 1602, 16 L Ed 2d 694 (1966).

[2] A driver who has been lawfully stopped for DUII is "deemed to have given consent to submit to field sobriety tests" if the officer reasonably suspects that he has violated the DUII laws. ORS 813.135. Under ORS 813.100(1), a driver who has been arrested for DUII is "deemed to have given consent" to a breath test.

813.135 makes no mention of any remedy if police fail to follow its requirements. The legislature has expressly required the exclusion of evidence that is obtained in violation of certain statutes. *e.g.*: ORS 133.673; ORS 133.735; ORS 136.695. In *State v. Valentine/Darroch*, 264 Or 54, 504 P2d 84 (1972), *cert den* 412 US 948 (1973), the Supreme Court observed:

> "We have never excluded evidence *because* it was obtained in violation of a statute, as contrasted with a violation of the Federal or State Constitutions." 264 Or at 68. (Emphasis supplied.)

That does not mean that courts will never suppress in the absence of a constitutional violation or an express legislative mandate. *State v. Valdez*, 277 Or 621, 629, 561 P2d 1006 (1977). Instead, we look

> "to the character of the rule violated in the course of securing the evidence when deciding whether the rule implied a right not to be prosecuted upon evidence so secured." *State v. Ingram*, 313 Or 139, 146, 831 P2d 674 (1992) (quoting *State v. Davis*, 295 Or 227, 235, 666 P2d 802 (1983)).

The evidence should be excluded, if doing so would effectuate the purpose of the statute. *State v. Porter*, 312 Or 112, 121, 817 P2d 1306 (1991); *State v. Davis, supra*, 295 Or at 236. Our first task, then, is to ascertain the legislature's purpose when it enacted ORS 813.135. ORS 174.020; *State v. Galligan*, 312 Or 35, 39, 816 P2d 601 (1991).

■ ORS 813.320 provides:

> "The provisions of the implied consent law, except ORS 813.300, shall not be construed by any court to limit the introduction of otherwise competent, relevant evidence in any civil action, suit or proceedings or in any criminal action other than a violation of ORS 813.010 or a similar municipal ordinance in proceedings under ORS 813.410."

ORS 813.320 controls the admissibility of breath test results under the Implied Consent Law. The current version of that statute was in effect when the law of implied consent was extended in 1989 to encompass field sobriety tests.[3] ORS

---

[3] Or Laws 1989, ch 576, § 15. *Former* ORS 487.820 has been amended, without substantive modification, and renumbered as ORS 813.320. Or Laws 1983, ch 338, § 596; Or Laws 1985, ch 16, § 302.

813.100(1) requires an officer to inform a driver who has been arrested for DUII of the "consequences *and rights* as described in ORS 813.130" before administering a breath test. (Emphasis supplied.) In contrast, ORS 813.135 only requires that the officer inform the driver "of the *consequences* of refusing to take or failing to submit to the [field sobriety] tests." (Emphasis supplied.) Because the language of the two statutes is different, cases interpreting the admissibility of breath test results may be instructive, but they do not control the admissibility of field sobriety test results under ORS 813.135. *See State v. Nguyen,* 107 Or App 716, 813 P2d 569, *rev den* 312 Or 527 (1991); *State v. Weisher,* 78 Or App 468, 717 P2d 231, *rev den* 301 Or 338 (1986); *State v. Creson,* 33 Or App 369, 576 P2d 814 (1978).

In *State v. Newton,* 291 Or 788, 799, 636 P2d 393 (1981), the Supreme Court concluded that

> "the consent envisioned by [ORS 813.100(1)] is to be implied and if submission is not forthcoming, *it is to be coerced by fear of adverse consequences.*" (Emphasis supplied.)

When *Newton* was decided, an officer's duty to inform a driver of "consequences and rights" was triggered only if the driver had initially refused to submit to a request to take the breath test. 291 Or at 799. ORS 813.135 and the current version of ORS 813.100(1) now require an officer to give the requisite advice *before* administering field sobriety or breath tests, regardless of whether the driver initially refuses or complies.

The modification of ORS 813.100(1) has not changed its primary purpose. In *State v. Spencer,* 305 Or 59, 71, 750 P2d 147 (1988), the Supreme Court said:

> "Consent [to submit to a breath test] being implied by law, a driver may not legally refuse. A driver, however, can *physically* refuse to submit, and [the law] forbids the use of physical force to compel submission. The history and development of the implied consent law * * * suggest that the advice to be given an arrestee was intended to provide an additional incentive, short of physical compulsion, to induce submission." (Emphasis in original; footnotes omitted.)

The advice required by ORS 813.100(1) provides an incentive for the driver, short of physical compulsion, to conform his conduct to the requirements of the law by taking the tests that he has already consented to take. ORS 813.135

serves the same purpose, by informing the driver that he cannot avoid the adverse consequences of taking the tests and performing poorly simply by refusing to take them. The coercive nature of ORS 813.135 is underscored by the fact that it requires an officer to advise the driver only of the adverse *consequences* of refusing to take the field sobriety tests. Unlike ORS 813.100(1), it does not require the officer to impart any information of a protective nature.[4]

If the driver takes the field sobriety tests after being warned of the consequences of refusal, then the goals of the Implied Consent Law are fully realized. If he takes them without the coercive pall of the warnings, then the statutory purpose is fulfilled as a matter of coincidence. No further incentive or coercion is necessary, and the law does not require an officer to engage in a hollow exercise of reciting the warnings when it would serve no purpose. The trial court did not err by admitting evidence of the field sobriety tests.

Defendant is nonetheless entitled to a new trial. At the hearing on his motion to suppress, he testified that on the way to the police station, he made several requests to call his attorney to ask him to be present at the breath test. He repeated that request at the station, but was not allowed to call his lawyer, because Foust did not want to postpone the test until the lawyer arrived. Foust admitted that, "at one point, * * * he did state that he wanted an attorney present for the breath test." However, Foust did not allow defendant to call his attorney, because "[h]e never actually asked to telephone counsel." Defendant voluntarily took the breath test, and the results were admitted at his trial.

■■ Defendant did not have the right to have his lawyer present during the breath test. *State v. Gardner*, 52 Or App 663, 629 P2d 412, *rev den* 291 Or 419 (1981). However, a suspect's decision whether to take or refuse to take a breath test "is to be an informed one." *State v. Scharf*, 288 Or 451, 458, 605 P2d 690 (1980). Accordingly, defendant did have the right to try to call his attorney before deciding whether to

---

[4] For example, in *State v. Creson, supra*, we held that the breath test results should have been suppressed, because the arresting officer had warned the defendant that he could lose his license for refusing to take a breath test, but did not advise him that he had the right to have an independent blood alcohol test conducted.

take the test. Or Const, Art I, § 11; *State v. Spencer, supra*, 305 Or at 72-75.

■ Defendant's attorney asked Foust, "If he had been more specific, if he had said 'I want to call my attorney,' would you then have provided him the opportunity?" Foust answered, "Certainly." The state argues, and the trial court agreed, that defendant did not invoke his right to counsel when he asked to have his attorney present for the breath test. In denying his motion to suppress the breath test results, the court said:

> "He does have the right to get legal advice as to whether or not to take the test, but that is not what he requested to do. From what the officer said, and from what the defendant said, the only request was he wanted his attorney present."

That ruling would require a person in custody to understand the subtle contours of his right to counsel. However, that right is premised on the proposition that untrained citizens are generally not experts in the law. Article I, section 11, does not require the precision that Foust expected. We recently held:

> "An adequate invocation [of the right to counsel] is 'any plain reference, however glancing, to a need or desire for representation." *State v. Wickey*, 95 Or App 225, 230, 769 P2d 208 (1989) (quoting *Connecticut v. Barrett*, 479 US 523, 534, 107 S Ct 828, 93 L Ed 2d 920 (1987) (Brennan, J., concurring)).

Defendant made a plain reference (maybe several) to his desire for representation. When his request was denied, his right to counsel under Article I, section 11, was violated. The results of the breath test should have been suppressed.

Reversed and remanded for a new trial.

**DURHAM, J.,** specially concurring.

I concur in the lead opinion ordering a new trial due to the violation of defendant's right to counsel in connection with the breath test. However, I disagree with the its analysis of the field sobriety test issue.

ORS 813.135 provides:

> "Any person who operates a vehicle upon premises open to the public or the highways of the state shall be deemed to have given consent to submit to field sobriety tests upon the

request of a police officer for the purpose of determining if the person is under the influence of intoxicants if the police officer reasonably suspects that the person has committed the offense of driving while under the influence of intoxicants in violation of ORS 813.010 or a municipal ordinance. Before the tests are administered, the person requested to take the tests shall be informed of the consequences of refusing to take or failing to submit to the tests under ORS 813.136.''

When ORS 813.135 was added to the Implied Consent Law, ORS 813.100 *et seq*, in 1989, DUII prosecutions had been subject to this rule for more than a decade:

"The negative cast of [the predecessor of ORS 813.320][1] which does not bar violative evidence in cases other than [DUII prosecutions], implies its converse: *Evidence obtained in violation of its implied consent procedures is not admissible in the trial of a charge of driving under the influence of intoxicants.*" *State v. Creson*, 33 Or App 369, 372, 576 P2d 814 (1978) (Emphasis supplied.)

*Creson* held that a police officer's failure to give complete advice to a driver of rights in connection with a breath test rendered the test results inadmissible in a DUII prosecution. That construction of the predecessor of ORS 813.320 became "a part of the statute as if written into it at the time of its enactment." *Walther v. SAIF*, 312 Or 147, 149, 817 P2d 292 (1991). The legislature has modified other aspects of the Implied Consent Law in response to judicial constructions. We assume that, when the legislature enacts modifications of a statute, it is aware of judicial decisions, like *Creson*, that have interpreted the statutes. *See State v. Clevenger*, 297 Or 234, 244, 683 P2d 1360 (1984). Although *Creson* has been the law since 1978, and the legislature has repeatedly modified other elements of the Implied Consent Law since then, it has *never* modified *Creson*. Nothing in ORS 813.135 suggests that it was meant to be exempt from *Creson*. With that background, the majority opinion is properly read

---

[1] ORS 813.320 provides:

"The provisions of the implied consent law, except ORS 813.300, shall not be construed by any court to limit the introduction of otherwise competent, relevant evidence in any civil action, suit or other proceedings or in any criminal action other than a violation of ORS 813.010 or a similar municipal ordinance in proceedings under ORS 813.410."

as an exercise in avoiding the obvious conclusion that the legislature intended the *Creson* rule to govern the admissibility of evidence obtained in violation of field sobriety test procedures.

The lead opinion notes a distinction in the statutory description of the information that the officer must convey to the driver:

> "ORS 813.100(1) requires an officer to inform a driver who has been arrested for DUII of the 'consequences *and rights* as described in ORS 813.130' before administering a breath test. (Emphasis supplied.) In contrast, ORS 813.135 only requires that the officer inform the driver 'of the *consequences* of refusing to take or failing to submit [to] the [field sobriety] tests.' (Emphasis supplied.)" 114 Or App at 612.

Because of that distinction, the majority declares breath test cases, like *Creson*, to be "instructive" but not controlling.

The lead opinion's distinction is unconvincing. *Nothing* in *Creson* suggests that its rule was founded on the fact that ORS 813.100(1) then obligated an officer to inform a driver of rights concerning a breath test, as distinguished from the consequences of refusing to take it. *Creson* was based on the legislature's policy that " 'potential defendants are not to be tricked or misled.' " *State v. Creson*, 33 Or App at 373, *quoting State v. Freymuller*, 26 Or App 411, 413, 552 P2d 867 (1976). The same policy underlies the notice of consequences requirement in ORS 813.135. A driver who is informed of the consequences of refusing a field sobriety test is less likely to be victimized by trickery, misunderstanding and deception about the consequences of refusing the test than is a driver who is uninformed. The lead opinion simply refuses to acknowledge that the same policy motivated the notice requirement in both the breath test and field sobriety test statutes.

Moreover, even granting that there is a distinction in the terms used to describe the required notice in the two statutes, it is easily explained. The breath test statute creates specific rights in the driver, such as the right to request an additional chemical test for blood alcohol content, to ensure a fair opportunity to show that a positive test is inaccurate. *See* ORS 813.130(2), (3). The field sobriety test statute creates no

equivalent rights. No policy protecting drivers against deception and trickery would be served by requiring a notice of nonexistent "rights" in a field sobriety test. Searching for a way to distinguish *Creson*, the lead opinion has seized on the presence of a single word — "rights" — in the breath test statute that has no relevance in the field sobriety test context. More importantly, the majority refuses to acknowledge that both statutes identically require a notice of consequences of a refusal to take the test and are based on the identical policy, *i.e.*, protecting drivers from deception.

Neither can the lead opinion meaningfully distinguish *Creson* on its facts. The defendant in *Creson* initially resisted a breath test, while the defendant here did not resist a field sobriety test. However, as the majority notes, 114 Or App at 612, the former breath statute obligated an officer to inform the driver of "consequences and rights" only if the driver initially refused the test. The requirement of an initial refusal has been stricken from the breath test statute and was not added to the field sobriety test statute. Logically, those facts suggest that the legislature now requires the police to inform every driver of the consequences of refusing each type of test, regardless of any initial refusal or agreement by the driver, and knows that the *Creson* rule applies if the officer administers either test without first giving the required notice. The lead opinion finds support for its result in *dicta* in *State v. Spencer*, 305 Or 59, 750 P2d 147 (1988), which held that the implied consent law did not require police to afford a driver access to counsel before submitting to a breathalyzer test. In reaching that conclusion, the court agreed with the plurality opinion in *State v. Newton*, 291 Or 788, 636 P2d 393 (1981), that the

> "references [in ORS 813.100(1)] to a driver's 'refusal' do not evince a legislative concern that the driver make a voluntary and fully informed decision whether to submit to the test. Consent being implied by law, a driver may not legally refuse. A driver, however, can *physically* refuse to submit, and the implied consent law, recognizing that practical reality, forbids the use of physical force to compel submission. The history and development of the implied consent law, as outlined by the dissent in [*State v.*] *Scharf*[, 288 Or 451, 605 P2d 690 (1980),] and by the plurality in *Newton*, suggest that the advice to be given an arrestee was intended to provide an

additional incentive, short of physical compulsion, to induce submission. Moreover, while the implied consent law sets out in detail the advice to be given a driver before the breath test may be administered, ORS 813.130, there is no express provision for advising the driver that he or she may contact an attorney. In view of the background and purpose of the statutes at issue here, we cannot infer any legislative intent that a driver's decision physically to refuse the test be made with the advice of a lawyer.

"As the dissent in *Scharf* also pointed out, the legislature provides that, if an arrested driver is not adequately advised, a refusal to submit to a breath test cannot serve as a basis for license suspension. ORS 813.410. The legislature has provided in detail the advice to be given and the consequences of failure to advise. We decline to find, as the *Scharf* court appeared to suggest, that the legislature intended to afford an arrested driver an additional, though unexpressed, right with an additional, also unexpressed, penalty for violation of that right." *State v. Spencer, supra,* 305 Or at 71. (Emphasis in original; footnotes omitted.)

In reaching its conclusion, the *Spencer* court quoted a passage from *Newton* that is relevant to this case:

"The statute's reference to a 'refusal' does not reinstate a driver's right to choose whether to submit to the test; rather it recognizes the 'physical reality' of a driver's ability physically to resist the tests. *State v. Newton, supra,* 291 Or at 792-93. Thus, the implied consent law 'is designed to overcome the possibility of physical resistance, despite legal consent, without resort to physical compulsion' by imposing adverse legal consequences on a refusal to submit to the test. *Id.* at 793, 636 P2d 393. The plurality also noted that, under *former* ORS 487.805(2), an officer was required to inform the accused of the consequences of refusal only after an initial refusal to take the test stating:

" 'Had the legislature been concerned "with assuring the arrested driver a voluntary and informed choice" as we stated in *Scharf,* 288 Or at 459 [, 605 P2d 690 (1980)] it surely would have required the police to advise the driver *before,* not *after,* the driver first chooses to submit or refuse.' *Id.* at 799 (emphasis in original).

"The plurality concluded that the legislature did not intend an arrested driver to have *any* choice whether to submit to the breath test, and that access to counsel before taking the

test was not required by *former* ORS 487.805." *State v. Spencer, supra*, 305 Or at 67.

*Spencer* and *Newton* do not decide the issue posed in this case. The stumbling block for the defendant in *Spencer* was that he asked the court to *imply* a right to counsel from the reference in ORS 813.100(1) to consequences of a driver's physical "refusal" to take a breath test. While repeatedly conceding that a driver could physically refuse to submit, the court declined to judicially create a right to obtain the advice of a lawyer to achieve that undesired result.

The passage from *Newton* quoted in *Spencer* has obvious implications for this case. To paraphrase it, the requirement in ORS 813.135 that the police advise the driver *before*, not *after*, the driver chooses to submit to or refuse a field sobriety test demonstrates a concern that the arrested driver be accurately informed of the consequences of refusing the test before any test is administered.

The limited statutory right to a notice of consequences will almost never convey enough information to permit a driver to be "fully informed." However, it will have predictable effects that, I assume, the legislature fully realized and intended. The notice will probably serve as an additional incentive to comply with the officer's request in most cases. In a few cases, the notice may induce a driver to refuse the test physically. That consequence is undesirable in view of the consent law's policy to obtain compliance with requests for tests in all cases. However, it is an inevitable effect of a law that implies a driver's consent to a test from the act of driving and denies him a "legal" right to refuse but acknowledges his ability to physically resist the test and forbids the use of physical force to compel submission.

The majority holds that requiring warnings would serve no purpose when the driver consents to the tests, because the "coercive pall of the warnings" is not needed. 114 Or App at 613. I disagree. Unlike in *Spencer*, we are not asked to imply a right to information from ambiguous statutory terms. ORS 813.135 expressly requires a notice of consequences in all cases, despite any initial reaction of resistance or compliance by the driver, and specifies that the notice shall be conveyed before the test is administered. The statute's

terms and its predictable effects suggest that a paramount objective of the notice requirement is the avoidance of misunderstanding and possible deception of the driver, not only the coercion of submission to the test. If coercion were the sole objective, the legislature would have maintained the now discarded requirement that the warning of consequences be given only after the driver initially refuses to submit. If the notice occasionally induces a driver to decline the test, we can only assume that the legislature was aware of the inevitable risk, but nevertheless opted for a policy that minimally assures that drivers will not be tricked or misled about the consequences of a refusal.

I am concerned about the practical effect of the lead opinion's result. Although the statute entitles every driver to a notice of consequences, as a practical matter only those drivers who resist the test are likely to receive a notice. I cannot join in enforcing the statutory right to notice for those drivers who resist law enforcement officers' requests, while denying that right to those drivers who cooperate. The lead opinion's rule would necessarily encourage officers to cajole or pressure drivers into compliance without giving the required notice, and will spawn unnecessary factual disputes about whether a driver consented to a test without the required warning.

I cannot join in the separate opinion of Edmonds, J., because he concludes that a driver must first refuse the test before ORS 813.135 applies. Although ORS 813.136 states the consequences of a driver's refusal to take a field sobriety test, it says nothing about the effect of the *officer's* failure to inform the driver of consequences, as required by ORS 813.135. Nothing in the terms of the notice requirement suggest that it is applicable only in the event of a driver's refusal. In fact, its legislative history refutes that interpretation.

The officer violated ORS 813.135 by failing to give the required notice of consequences of a refusal before administering the field sobriety test. Under the rule in *State v. Creson, supra,* the evidence obtained through the unlawful test procedure is not admissible in this DUII trial. I join the portion of Judge Riggs' dissenting opinion that criticizes the lead opinion for disregarding *Creson.*

For the reasons stated above, I concur in the lead opinion's result, but disagree with its analysis of the field sobriety test issue.

Buttler, J., joins in this special concurrence.

**WARREN, J.,** concurring in part; dissenting in part.

I agree with Judge De Muniz that the field sobriety test need not be suppressed. I agree, however, with Judge Riggs that the trial court did not err in failing to suppress the results of the breath test, because defendant never requested to talk with his attorney. The request was to have his attorney present and, as the lead opinion concedes, he was not entitled to have that request honored.

We review for error. I would hold that the trial court did not err in refusing to suppress the field sobriety test and the breath test. I would affirm.

**DEITS, J.,** concurring in part; dissenting in part.

I concur in the portion of the lead opinion concerning the suppression of the field sobriety test. On the question of the suppression of the breath test, I agree with the opinion of Judge Edmonds.

**EDMONDS, J.,** concurring in part; dissenting in part.

I agree with the majority that the trial court properly admitted the results of the field sobriety tests but not with the reasons expressed.

When read together, ORS 813.135 and ORS 813.136[1] provide a statutory scheme that results in the admissibility in evidence of the fact of a refusal to take a field sobriety test. An operator of a motor vehicle on premises open to the public or on a highway impliedly consents to the taking of field sobriety tests if he has been informed of the consequences of refusing to take the test. If the advice is given, and he then refuses to take the test, the refusal is admissible as

---

[1] ORS 813.136 provides:

"If a person refuses or fails to submit to field sobriety tests as required by ORS 813.315, evidence of the person's refusal or failure to submit is admissible in any criminal or civil action or proceeding arising out of allegations that the person was driving while under the influence of intoxicants."

evidence. Here, there was no refusal. Therefore, the event that triggers the applicability of ORS 813.315 and ORS 813.136 never occurred. ORS 813.135 and ORS 813.136 are not about the admissibility of the *results* of field sobriety tests. The trial court did not err when it refused to suppress the test results on the basis of the violation of ORS 813.135.

The majority also holds that defendant made a plain request to consult with counsel before he took the Breathalyzer test. However, the evidence is in conflict on that issue. Defendant testified that, while he was being transported to jail, he asked the officer "at least four or five times" to stop at a telephone so that he could call his attorney and ask him to be present at the test. Again, at the jail, he made a similar request. According to defendant, the officer said that he would not allow him to call an attorney, because the officer was not willing to postpone the test until the attorney arrived. On the other hand, the officer testified that defendant "never actually asked to telephone counsel" while being transported to jail or at the jail, that, if he had asked if he could make a telephone call, he would have been given the opportunity to do so, that he was told that "he would have an adequate opportunity to contact counsel" and that at, "one point, * * * he did state that he wanted an attorney present for the breath test."

The trial court did not expressly resolve the conflict in the testimony, nor can we tell from its decision that it perceived that there was a conflict. It concluded:

"From what the officer said, and from what the defendant said, *the only request* was he wanted his attorney present. That falls outside [*State v. Spencer*, 305 Or 59, 750 P2d 147 (1988)] * * *." (Emphasis supplied.)

That statement is *only* susceptible to the inference that the trial court thought that defendant *and* the officer agreed that defendant's only request was to have an attorney present at the test. The majority errs when it assumes the credibility of defendant's testimony and doesn't concern itself with the conflict in the testimony. Although it is correct that, if findings are not made on issues such as credibility and if there is evidence from which facts could be decided more than one way, we will presume that they were decided in a manner consistent with the ultimate conclusion, *see Ball v. Gladden*,

250 Or 485, 443 P2d 621 (1968), the trial judge's statement demonstrates that he misunderstood the evidentiary record. I would remand so that the trial court can make findings as to whether defendant made a request to call his attorney. *See State v. Wise*, 305 Or 78, 748 P2d 1179 (1988). If he did, the officer was bound to honor that request, regardless of the purpose underlying it. If he did not, then no constitutional right was implicated.

**RIGGS, J.,** dissenting.

I dissent. I would not disregard *State v. Creson*, 33 Or App 369, 576 P2d 814 (1978), as the lead opinion effectively does. *Creson* interpreted ORS 813.320 to contain a legislative intent to exclude evidence that is (1) obtained in violation of implied consent procedures and (2) is offered in a prosecution for DUII. That interpretation has stood for 14 years and has not been overruled or narrowed by the Supreme Court or the legislature. Since *Creson* was decided, ORS 813.320 has been modified only slightly to make it consistent with the renumbering of, and additions to, the Implied Consent Law. The legislature has not altered the substantive language of the statute. We must assume the legislature knows the interpretations the judiciary gives its enactments. When, over the course of several years and minor amendments, it chooses not to narrow or overrule an interpretation, we assume the legislature has accepted it. *Cf. State v. Ford*, 310 Or 623, 637 n 21, 801 P2d 754 (1990). That is especially true regarding Oregon's Implied Consent Law, which the legislature has amended at least twice to overrule, or to avoid the effects of, judicial interpretations.

I also disagree with the characterizations given by the majority to the defendant's request for counsel. I would hold that defendant did not make a request for an attorney for any purpose other than to be present during the breath test.

For these reasons, I dissent and concur with that portion of Judge Durham's separate opinion dealing with the field sobriety tests.

Buttler and Durham, JJ., join in this dissent as to those portions dealing with the field sobriety tests.

Warren, J., joins in this dissent as to those portions dealing with the right to counsel.