Argued and submitted January 23, affirmed November 15, 1995

STATE OF OREGON,
*Appellant,*

*v.*

ROBERT DALE ASHLEY,
*Respondent.*

(93-61121; CA A83693)

907 P2d 1120

Jonathan H. Fussner, Assistant Attorney General, argued the cause for appellant. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Richard L. Fredericks argued the cause for respondent. With him on the brief was Dennett & Fredericks, P.C.

Before Deits, Presiding Judge, and Haselton and Armstrong, Judges.

DEITS, P. J.

## DEITS, P. J.

The state appeals from a pre-trial order suppressing the results of defendant's breath test for blood alcohol. ORS 138.060(3). We affirm.

Early on the morning of September 4, 1993, state trooper Hoffman stopped defendant on his motorcycle. During the encounter, defendant admitted to Hoffman that he had consumed "a couple of beers." Hoffman then asked defendant to perform some field sobriety tests, and he agreed to do so. Defendant performed the horizontal gaze nystagmus test and the walk and turn test. When asked to perform the one leg stand test, he refused and stated that "he thought he should talk to an attorney before he cooperated anymore." After Hoffman advised defendant of the statutory consequences of refusing to perform field sobriety tests, ORS 813.136,[1] in response to Hoffman's request, defendant tried the one leg stand test, but was unable to hold his leg up to the required count of 30.

Hoffman arrested defendant, handcuffing him and placing him in the back of his patrol car. Hoffman then started reading defendant his *Miranda* rights. After telling defendant that he had the right to have an attorney present during questioning, defendant interrupted Hoffman and stated that he wanted Neal, a local attorney, present. Hoffman continued reading defendant his *Miranda* rights, and then asked defendant if he understood those rights. Defendant responded that he did and that he wanted to have Neal present. Hoffman did not ask him any more questions pertaining to the DUII investigation and transported him to the Lane County jail.

When they arrived at the jail, Hoffman took defendant to the Intoxilyzer room, which contained a telephone. Hoffman testified that he was aware that defendant had a right to a reasonable opportunity to consult with an attorney

---

[1] ORS 813.136 provides:

"If a person refuses or fails to submit to field sobriety tests as required by ORS 813.135, evidence of the person's refusal or failure to submit is admissible in any criminal or civil action or proceeding arising out of allegations that the person was driving while under the influence of intoxicants."

*But see State v. Fish*, 321 Or 48, 893 P2d 1023 (1995).

before taking the breath test. He further testified that had defendant asked to call or talk with an attorney at that time, he would have given him the opportunity.[2] Hoffman then proceeded to examine defendant's mouth, visually, to perform the pre-test procedures for the Intoxilyzer machine, and to read defendant his implied consent rights. ORS 813.130. Defendant then took the breath test.[3]

Before trial, defendant moved to suppress the results of the breath test on the ground that he was denied a reasonable opportunity to consult with his attorney before taking the test. *State v. Spencer*, 305 Or 59, 74, 750 P2d 147 (1988). The trial court agreed:

> "Although the Defendant had no right to contact and receive the advice of counsel before deciding to perform field sobriety tests, * * * he did make that request part way through the tests. The Defendant clearly indicated to Trooper Hoffman that he wanted to speak to an attorney about 'doing any more tests' and repeated his request twice more without a response from the trooper other than the cessation of questioning. The Defendant had done nothing to indicate that he had changed his mind about his desire to speak to an attorney. Failure of the officer to offer the Defendant an opportunity to use the telephone in the breath test room before taking the test requires suppression of the result of that test."

■    The state assigns error to the trial court's order suppressing the breath test results. We review for errors of law. *See State v. Trenary*, 114 Or App 608, 836 P2d 739 (1992), *aff'd on other grounds* 316 Or 172, 850 P2d 356 (1993).

■■    Under Article I, section 11, of the Oregon Constitution,[4] a driver taken into full custody has the right, upon request, to a reasonable opportunity to obtain legal advice

---

[2] At the suppression hearing, defendant claimed that, while he was in the Intoxilyzer room, he did ask Hoffman if he could talk to his attorney. That testimony directly contradicted Hoffman's. The trial court, however, expressly found Hoffman more credible on that issue, and defendant does not challenge that finding on appeal.

[3] The record does not indicate the precise results of the breath test.

[4] Article I, section 11, of the Oregon Constitution provides, in part:

"In all criminal prosecutions, the accused shall have the right * * * to be heard by himself and counsel."

before taking a breath test. *Spencer*, 305 Or at 74-75. A violation of that right warrants suppression of the breath test results. *Id.* at 76.

■ The sole issue here is whether defendant, by making a general request for the presence of his attorney, invoked his limited right to consult with an attorney before taking the breath test. In *Trenary*, we considered whether a defendant had invoked his right to consult an attorney before taking the breath test. 114 Or App 608. There, the defendant appealed his conviction for DUII on the ground that he was denied a reasonable opportunity to consult with his attorney before taking the breath test. The state argued that the defendant did not invoke his right to counsel. At his suppression hearing, the defendant testified that, after his arrest for DUII, he made several requests to call his attorney to request his presence for the breath test. The defendant testified that he made those requests on the way to the police station and after he arrived there. The trial court acknowledged that the defendant had a limited right to obtain his attorney's advice on whether to take the breath test. However, the trial court determined that the defendant requested the *presence* of his attorney, instead of his attorney's advice on whether to take the test. We reversed the trial court's ruling. In doing so, we held:

> "[The trial court's] ruling would require a person in custody to understand the subtle contours of his right to counsel. However, that right is premised on the proposition that untrained citizens are generally not experts in the law. Article I, section 11, does not require the precision that [the officer] expected. We recently held:
>
> > " 'An adequate invocation [of the right to counsel] is "any plain reference, however glancing, to a need or desire for representation." *State v. Wickey*, 95 Or App 225, 230, 769 P2d 208 (1989) (quoting *Connecticut v. Barrett*, 479 US 523, 534, 107 S Ct 828, 93 L Ed 2d 920 (1987) (Brennan, J., concurring)).'
>
> "Defendant made a plain reference (maybe several) to his desire for representation. When his request was denied, his right to counsel under Article I, section 11, was violated. The results of the breath test should have been suppressed." *Id.* at 614.

The state argues that none of defendant's requests for counsel here was sufficient to invoke his Article I, section 11, right to consult with counsel. It asserts that a person must make a specific request to consult counsel about whether to take the breath test and that defendant's request to talk to an attorney made in the course of a custodial interrogation invoked only his Article I, section 12, right to have an attorney to prevent compelled self-incrimination. We disagree.

■  The state's position would require a DUII suspect to possess the legal expertise that we said in *Trenary* would be unrealistic to expect of most people. A person ought not to be required to enunciate the correct constitutional source of his right to consult an attorney or lose that right. Instead, if a person requests an attorney and has the right to an attorney under both Article I, section 12, and Article I, section 11, the state should honor that request, and, in doing so, comply with the requirements of *both* constitutional provisions. The state impliedly acknowledges that, after defendant was arrested and read his *Miranda* rights, he had the right to an attorney under both Article I, section 12, and Article I, section 11. Defendant made two "plain reference[s] * * * to his desire for representation," *Trenary*, 114 Or App at 614, during and after the recitation of his *Miranda* rights.[5] Article I, section 12, required Hoffman to stop questioning defendant and grant his request.[6] *State v. Kell*, 303 Or 89, 95, 734 P2d 334 (1987). Because of the plain reference to the desire for representation, Article I, section 11, also required Hoffman to give defendant a reasonable opportunity to consult with an attorney before taking the breath test.[7] *Spencer*, 305 Or at 74-75. That requirement could have been satisfied by simply telling defendant that he could use the telephone in the Intoxilyzer room to talk to his attorney during the observation period. *See State v. Brazil-Kay*, 137 Or App 589, 907 P2d 1116

---

[5] During his encounter with Hoffman, defendant actually made three requests for an attorney. The first request occurred while he was performing the field sobriety tests when he stated that he should talk to a lawyer before cooperating further. Defendant made that request, however, before his arrest, and, consequently, before his Article I, section 11, right to an attorney had arisen.

[6] Defendant does not assert that Hoffman violated his Article I, section 12, right to an attorney to prevent compelled self-incrimination.

[7] The fact that defendant asked for the *presence* of his attorney instead of an opportunity to call his attorney is immaterial. *See Trenary*, 114 Or App at 613-14.

(1995). Hoffman violated defendant's Article I, section 11, right by failing to offer him a reasonable opportunity to consult with his attorney before taking the breath test. Accordingly, the trial court properly suppressed the evidence of defendant's breath test results.

Affirmed.