Submitted January 30, 2014, conviction for driving under the influence of intoxicants reversed and remanded, otherwise affirmed March 16, 2016

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

VICTOR EDWARD ESKIE,
*Defendant-Appellant.*

Lane County Circuit Court
211123696; A151770

370 P3d 1266

Robert J. Smith filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Matthew J. Lysne, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and DeVore, Judge, and Haselton, Senior Judge.

HASELTON, S. J.

## HASELTON, S. J.

Defendant appeals a judgment convicting him of driving under the influence of intoxicants (DUII), ORS 813.010, assigning error to, *inter alia*, the trial court's admission of evidence that he refused to perform the Horizontal Gaze Nystagmus (HGN) field sobriety test (FST).[1] Specifically, defendant asserts that, because the police failed to advise him, in accordance with ORS 813.135, that his refusal to perform nontestimonial FSTs would be admissible at trial pursuant to ORS 813.136, the court was obligated to exclude evidence of that refusal. The issue is novel, and its correct resolution hardly certain. Nevertheless, as explained below, we agree with defendant and, accordingly, reverse and remand the DUII conviction.[2]

The facts and circumstances material to our review of defendant's first assignment of error are straightforward. On October 25, 2011, while patrolling the McKenzie Highway, Lane County Sheriff's Deputy Pease saw a car driven by defendant cross the fog line once and the center line twice. After seeing defendant's erratic driving, Pease pulled defendant over to investigate him for DUII. Pease asked if he could check defendant's eyes for nystagmus[3]—a component of the HGN FST—while defendant remained seated in the car. Defendant initially agreed. Pease instructed defendant to follow Pease's finger with his eyes. Pease passed his finger

---

[1] Defendant was also convicted in the same judgment of driving while suspended, ORS 811.182(4), an offense to which he pleaded guilty. Defendant does not challenge his conviction on that charge.

[2] Given our analysis and disposition, we need not, and do not, reach and resolve defendant's second assignment of error by which he contends that the trial court erroneously admitted the testimony of the arresting officer that defendant's "lack of smooth pursuit" was, *by itself*—and without reference to any other "clues" assessed in the HGN test—indicative that defendant had consumed alcohol (as opposed to being indicative of "intoxication" or impairment).

Although we anticipate that, given defendant's consistent denial of any consumption of alcohol, the admissibility of that testimony might well be at issue on remand—a circumstance in which, not infrequently, we offer some guidance—we decline to do so here. That is so because it is, at least, highly questionable whether defendant preserved his present, appellate challenge.

[3] "Nystagmus" is a "physiological phenomenon, which has been defined as an involuntary rapid movement of the eyeball." *State v. O'Key*, 321 Or 285, 294, 899 P2d 663 (1995) (internal quotation marks omitted).

in front of defendant's face, however, rather than follow Pease's finger, defendant began to stare into Pease's eyes. Pease told defendant that he was not following his finger as the test required, and defendant replied "I know. I'm looking you in the eyes."

Pease asked defendant to get out of his car and defendant complied. Pease tried again to administer the HGN test to defendant. Pease was able to do one pass for each eye, before defendant fixed his gaze on Pease's eyes, again refusing to complete the test. Based on the two passes, Pease determined that defendant's eyes were "tracking" but "lack[ed] smooth pursuit." However, Pease was not able to perform the remaining two parts of the HGN test. Pease did not attempt to administer any other FSTs and, instead, arrested defendant for DUII. At no point during the stop did Pease ever advise defendant that his refusal to complete the HGN test (or to perform any other FST) would be admissible at trial in a later prosecution.

The state charged defendant with DUII. Before trial, defendant filed a motion *in limine*, seeking to exclude certain evidence, including any testimony that he had refused to cooperate in the HGN test. As pertinent here, defendant contended that such testimony was inadmissible because the deputy had failed to advise him of the consequences of refusal—specifically including that evidence of his refusal would be admissible at trial, ORS 813.136—in violation of ORS 813.135.[4]

---

[4] ORS 813.135 provides:

"Any person who operates a vehicle upon premises open to the public or the highways of the state shall be deemed to have given consent to submit to field sobriety tests upon the request of a police officer for the purpose of determining if the person is under the influence of intoxicants if the police officer reasonably suspects that the person has committed the offense of driving while under the influence of intoxicants in violation of ORS 813.010 or a municipal ordinance. Before the tests are administered, the person requested to take the tests shall be informed of the consequences of refusing to take or failing to submit to the tests under ORS 813.136."

ORS 813.136 provides:

"If a person refuses or fails to submit to field sobriety tests as required by ORS 813.135, evidence of the person's refusal or failure to submit is admissible in any criminal or civil action or proceeding arising out of allegations that the person was driving while under the influence of intoxicants."

The state countered first that, because the HGN test is not "testimonial" for purposes of Article I, section 12, of the Oregon Constitution, *see, e.g., State v. Gile*, 147 Or App 469, 473, 936 P2d 1008 (1997), the constitutional constraints on admissibility addressed in *State v. Rohrs*, 157 Or App 494, 497, 970 P2d 262 (1998), *aff'd by an equally divided court*, 333 Or 397, 40 P3d 505 (2002), were inapposite. Further, the state suggested that, because defendant's motion was, by extension, predicated solely on purported statutory violations, ORS 136.432 precluded exclusion of the evidence.[5] The prosecutor also referred the court to *State v. Trenary*, 316 Or 172, 850 P2d 356 (1993), emphasizing that the circumstances of that case, which are described in detail below, 277 Or App at 101, were materially distinguishable in that the defendant in *Trenary* had actually performed the FSTs. Still, as the prosecutor forthrightly acknowledged,

> "[i]n dicta[,] the court does indicate that there may be an implied statutory exclusionary rule for people who do refuse the test and are not informed of the [consequences] under [ORS] 813.135.
>
> "* * * * *
>
> "* * * [T]hat section kind of gives you an idea of where the court's coming from.
>
> "Of course, it's dicta in that case[;] and *there hasn't been a case since that has ruled on that issue, unfortunately for us today.*"

(Emphasis added.)

The trial court denied the motion *in limine* with respect to defendant's refusal to perform the HGN test:

> "[W]hile there is a statutory requirement that—to give somebody information about the consequences of not submitting to [FSTs], there are many cases that discuss the fact that a statutory violation does not necessarily result in suppression. And because we don't reach a constitutional question on the HGN test, the defendant's motion is denied."

---

[5] The text of that statute is set out below. 277 Or App at 97.

At trial, Pease testified, describing defendant's refusal, by way of noncooperation, to perform the HGN tests. In closing, the prosecutor referred to, and emphasized, defendant's refusal to perform. The jury found defendant guilty of DUII.

On appeal, the parties reiterate their arguments regarding the admission of evidence of defendant's refusal to perform the HGN test. Defendant contends that Pease's failure to advise him of the consequences of refusal, as required under ORS 813.135, rendered evidence of his refusal inadmissible under ORS 813.136. The state remonstrates that ORS 136.432 precludes exclusion of that evidence.

Thus, our consideration is limited to a single issue: Does ORS 136.432 preclude exclusion of evidence of defendant's failure to perform the HGN test, where the sole asserted ground for exclusion was Pease's failure to advise defendant, as required by ORS 813.135, that evidence of such a refusal would be admissible pursuant to ORS 813.136? We begin with the general principles defining and governing the scope of ORS 136.432, and proceed to that statute's application in this context.

ORS 136.432 provides that

"[a] court may not exclude relevant and *otherwise admissible* evidence in a criminal action on the grounds that it was obtained in violation of any statutory provision unless exclusion of the evidence is required by:

"(1) The United States Constitution or the Oregon Constitution;

"(2) The rules of evidence governing privileges and the admission of hearsay; or

"(3) The rights of the press."

(Emphasis added.)

In *State v. Thompson-Seed*, 162 Or App 483, 986 P2d 732 (1999), we, for the first time, cogently and comprehensively construed ORS 136.432 and, in doing so, elucidated aspects of its application that are central to the dispute here. Accordingly, we describe *Thompson-Seed* in some detail.

In *Thompson-Seed*, the defendant, who had been convicted of negotiating a bad check and second-degree theft, argued that the trial court had erred in admitting bank records that had been "obtained in violation of applicable statutory procedures for obtaining such records." 162 Or App at 485. Specifically, one statute, *former* ORS 192.565 (1997), provided that, while financial institutions could disclose customer records upon service of a summons or subpoena, a copy of that summons or subpoena must also be served on the customer, and a second statute, *former* ORS 192.590(5) (1997), provided that "[e]vidence obtained in violation of ORS 192.550 to 192.595 is *inadmissible in any proceeding*."[6] (Emphasis added.) At trial, the state offered evidence that had been obtained by way of a subpoena, a copy of which had not been served on the defendant, and she objected, invoking ORS 192.590(5), but the trial court overruled that objection. *Thompson-Seed*, 162 Or App at 485.

On appeal, we addressed whether the recently enacted ORS 136.432 precluded exclusion under the preexisting ORS 192.590(5)—that is, whether ORS 136.432 effectively abrogated the preexisting exclusionary provision. 162 Or App at 487. We began by noting that, as a textual matter, the pivotal statutory term in ORS 136.432 was "and otherwise admissible" evidence—that is, if the disputed evidence was not "otherwise admissible," ORS 136.432 did not apply. *Id.* We then explored the probable legislatively intended meaning of "otherwise admissible" with respect to statutory exclusionary provisions and (nonconstitutional) judicially crafted exclusions of evidence based on statutory violations, which antedated the enactment of ORS 136.432. *Id.* at 487-89. In doing so, we noted initially a distinction, which the defendant had posited (and which we adopted), between "judicially created exclusion[s] of evidence based on the violation of a statute" and "existing, legislatively enacted *statutory* provisions defining the extent to which evidence must be excluded." *Id.* at 487 (emphasis added).

---

[6] The entire group of banking privacy laws was subsequently renumbered in 2011, and is now found at ORS 192.583 through 192.607. *Former* ORS 192.565 was renumbered as ORS 192.596, and *former* ORS 192.590 was renumbered as ORS 192.606.

We ultimately concluded that ORS 136.432 abrogated and precluded only the former, and not the latter. That is, that evidence that would be excluded under the latter was not "otherwise admissible" within the meaning of ORS 136.432. For present purposes, one passage of that analysis best captures its essence:

> "It could well be that, in enacting ORS 136.432, the legislature intended to address only the exclusion of evidence required by judicial ruling. The operative language, after all, is that '[a] *court* may not exclude relevant and otherwise admissible evidence.' (Emphasis added.) To be sure, it is the courts that exclude the evidence, one way or the other. But the language is consistent with an intention to focus more narrowly on court-created rules of exclusion.

> "Indeed, that strikes us as the more plausible interpretation of ORS 136.432. The legislature has enacted a number of statutes that prescribe the conditions of admissibility of certain evidence in criminal proceedings. It is unlikely that the legislature intended to repeal all of those statutes without explicitly saying so."

*Id.* at 488. We concluded that ORS 136.432 was intended "only to constrain courts from creating new rules of exclusion and not to repeal existing statutory rules of exclusion." *Id.* at 491. Consequently, the trial court had erred in failing to give effect to the preexisting statutory provision precluding admission of the bank records. *Id.* at 491-92.

Thus, the dispositive dichotomous distinction in the *Thompson-Seed* construct is between (1) legislatively imposed limitations on admissibility (which may most commonly, but not invariably, be phrased in terms of evidence being "admissible" if certain conditions are satisfied or, as in *Thompson-Seed* itself, of being "inadmissible" if certain conditions are not satisfied);[7] and (2) judicially created rules of exclusion developed to remedy the effects of statutory violations. *Accord State v. Bloom*, 216 Or App 245, 251, 172 P3d 663 (2007), *rev den*, 344 Or 280 (2008) ("[O]ur cases since the adoption of ORS 136.432 establish that suppression

---

[7] *See, e.g., Thompson-Seed*, 162 Or App at 488-89 (listing examples ranging from admissibility of Breathalyzer test results to inadmissibility of evidence obtained in violation of wiretap statutes).

of evidence for a violation of an implied consent statute is required only if the applicable statutes themselves require suppression of the evidence.").

The *sine qua non* of the former is legislative intent. For example, in *State v. Chipman*, 176 Or App 284, 287-88, 31 P3d 478 (2001), we examined ORS 813.131(4) (1997), which required the police to use a specific type of confirmatory test pursuant to the National Institute of Drug Abuse (NIDA) guidelines when testing for several kinds of drugs. The statute did not explicitly mandate exclusion of urine tests that did not comply with NIDA guidelines. *Id.* at 294. Nevertheless, we concluded that "the legislature's purpose for the adoption of the guideline demonstrates that the statute imposes a preliminary admissibility requirement" that the urine tests comply with the guidelines. *Id.* at 296. Thus, if the legislature manifested its intention to impose a foundational requirement or exclude particular evidence, the courts have to give effect to that intention, notwithstanding ORS 136.432. *Id.*; *see also State v. Prew*, 213 Or App 336, 339-40, 161 P3d 323 (2007) (holding that ORS 136.432 did not prevent the trial court from suppressing police officer's testimony based in part on videotape allegedly obtained illegally under ORS 165.540, because the legislature intended to impose a foundational requirement).

We proceed to the application of that construct in this context. Specifically, is the gravamen of the putative exclusion of defendant's refusal to perform the HGN test ultimately "legislative" or "judicial"?

ORS 813.135 provides:

"Any person who operates a vehicle upon premises open to the public or the highways of the state shall be deemed to have given consent to submit to field sobriety tests upon the request of a police officer for the purpose of determining if the person is under the influence of intoxicants if the police officer reasonably suspects that the person has committed the offense of driving while under the influence of intoxicants in violation of ORS 813.010 or a municipal ordinance. Before the tests are administered, the person requested to take the tests shall be informed of the consequences of refusing to take or failing to submit to the tests under ORS 813.136."

ORS 813.136, in turn, provides:

"If a person refuses or fails to submit to field sobriety tests as required by ORS 813.135, evidence of the person's refusal or failure to submit is admissible in any criminal or civil action or proceeding arising out of allegations that the person was driving while under the influence of intoxicants."

In the interest of cogent consideration, we defer for the moment any deconstruction of those statutory texts—and introduce *Trenary*, the only appellate authority to address, albeit in unabashed *dicta*, their application to circumstances similar to those here.

In *Trenary*, the defendant was stopped on suspicion of DUII. The arresting officer asked the defendant to perform FSTs but, in violation of ORS 813.135, never advised him of the consequence of a refusal to perform the tests. 316 Or at 174. Nevertheless—unlike the defendant here—the defendant in *Trenary did* perform the FSTs and subsequently moved to exclude evidence of his performance, arguing that the officer's violation of ORS 813.135 precluded the admission of that evidence. *Id.* The trial court denied that motion, the defendant was convicted, and, on appeal, we, in a divided en banc decision, sustained the trial court's ruling in that regard. *State v. Trenary*, 114 Or App 608, 610-13, 836 P2d 739 (1992).

The Supreme Court also affirmed the trial court, reasoning that, because the legislatively "dominant purpose" of the prescribed admonitions was "compulsion," 316 Or at 177, and the defendant had, in fact, performed the tests, the failure to comply with the statutory requirements was, effectively, a matter of "no harm, no foul." *Id.* at 178. Accordingly, no purpose consonant with the legislature's purpose would be served by way of a judicially grafted exclusionary rule to remedy the statutory violation—indeed, exclusion of the test results would contradict the legislature's intent. *Id.* at 178.[8]

---

[8] *Cf. Bloom*, 216 Or App at 248-52 (concluding that, where the defendant took a breath test, even if officer failed to correctly and completely advise the defendant of the consequences of refusal of breath test as required by statute, that purported statutory violation could not be basis for exclusion of test results, given operation of ORS 136.432).

That reasoning and holding was sufficient unto the day. And yet, the court also addressed the statutes' application with respect to a defendant who (like the defendant here) was not given the admonitions prescribed under ORS 813.135 and *refused* to perform the FSTs:

> "The only 'right' of a defendant that arguably arose from the enactment of ORS 813.135 and ORS 813.136 is the implied right of a person who has *refused* to submit to the tests to have evidence of his or her refusal suppressed if information concerning the consequences of refusal was not given. * * *
>
> "* * * * *
>
> "* * * ORS 813.135 and ORS 813.136 contain an implied exclusionary clause. The statutes imply that, if the driver *refuses* the tests and no information concerning the consequences of refusing was given, evidence of refusal is not admissible. That implication follows from the provision that makes evidence of the refusal admissible if the driver is informed of the consequences of refusal."

316 Or at 177-78 (emphasis in original).[9]

Aside from being patent *dicta*—albeit hardly incidental, and apparently quite conscious, *dicta* from a unanimous court—those passages from *Trenary* are curious, and perhaps even problematic, in some respects. For example, the court states that the "implied exclusionary clause" is a corollary of "the provision that makes evidence of the refusal admissible if the driver is informed of the consequences of refusal." *Id.* at 178. But where is such a "provision"? Nothing in the text of either statute—including, most pertinently, ORS 813.136—states that evidence of a refusal will be admissible if the driver has been advised of the consequences of refusal. Rather, the presumably referent text simply says that, "[i]f a person refuses or fails to submit to

---

[9] In *Trenary*, 316 Or at 179, the Supreme Court quoted with approval Judge Edmonds's separate opinion in this court's en banc decision. 114 Or App at 621-22 (Edmonds, J., concurring in part and dissenting in part). In that separate opinion, Judge Edmonds reasoned:

> *"If the advice is given, and [the defendant] then refuses to take the test, the refusal is admissible as evidence.* Here, there was no refusal. Therefore, the event that triggers the applicability of [the statutes] never occurred."

*Id.* (Edmonds, J., concurring in part and dissenting in part) (emphasis added).

field sobriety tests *as required by* ORS 813.135," "evidence of the person's refusal * * * is admissible." ORS 813.136 (emphasis added). Thus, it appears that the court construed the "as required by" language in ORS 813.136 to import a condition that the admonitions have been given—and, conversely, if they have not been given, to require exclusion. It is at least striking that the court adopted that construction notwithstanding the availability of a highly plausible alternative construction by which "as required by ORS 813.135" could refer simply to the first sentence of ORS 813.135, pertaining to implied consent to "submit to field sobriety tests."[10]

In all events, in *Trenary*, decided several years before the enactment of ORS 136.432, the Supreme Court did construe ORS 813.135 and ORS 813.136 as "*contain[ing]* an implied exclusionary *clause*." 316 Or at 178 (emphases added). The emphasized language is the language of legislation, not of a "judicially created exclusion of evidence based on the violation of a statute." *Thompson-Seed*, 162 Or App at 487; *accord State v. Powell*, 242 Or App 645, 658, 256 P3d 185 (2011), *rev'd on other grounds*, 353 Or 210, 282 P3d 845 (2012) ("ORS 136.432 was not intended to supersede statutes containing an internal exclusionary directive."). That distinction is especially significant, and hardly accidental, given the court's explicit acknowledgment in *Trenary* itself of the distinction between the two modes of exclusion, *see, e.g.*, 316 Or at 176-77, and its refusal, in the absence of the first, to adopt the second for drivers who performed the FSTs, *id.* at 177-79.

Further, and not insignificantly, *Trenary*'s *dicta* does not stand in archaic isolation. Rather, twice in the last four years, the Supreme Court has quoted that passage. In *State v. Cabanilla*, 351 Or 622, 624, 273 P3d 125 (2012), the court addressed the defendant's contention that his breath test results should be suppressed because he had not been effectively advised of the consequences of refusing to take a breath test, in that he was a native Spanish speaker—and the consequences were read to him in English. In rejecting

---

[10] It is also striking that, although *Trenary* initially characterized the "implied right" of suppression as "arguabl[e]," 316 Or at 177, the court's ultimate statement that the statutes "contain an implied exclusionary clause" is not so qualified, *id.* at 178.

the defendant's argument that his circumstances were analogous to those of the hypothetical defendant in *Trenary*, the court first quoted at length from *Trenary*, including the statement that "'ORS 813.135 and ORS 813.136 contain an implied exclusionary clause[,]'" *id.* at 638 (quoting *Trenary*, 316 Or at 177-78), and then concluded:

> "In this case, as we have held, defendant was provided the rights and consequences as required by ORS 813.130. * * * Therefore, the exclusionary clause implied by ORS 813.310 and ORS 813.320 (applicable to evidence of refusal to take a breath test, corresponding to ORS 813.136, dealing with evidence of refusal to submit to field sobriety tests), is not implicated here."

*Id.* at 638-39. Similarly, in *State v. Mazzola*, 356 Or 804, 820 n 15, 345 P3d 424 (2015), the court quoted the same pertinent text, observing that "ORS 813.135 and ORS 813.136, taken together, create a limited implied exclusionary rule[.]" *See also State v. Adame*, 261 Or App 11, 16, 323 P3d 282, *rev den*, 355 Or 703 (2014) (similar reference to *Trenary*).

In sum, in accordance with *Trenary*'s considered *dicta*, as reiterated in subsequent, recent Supreme Court decisions, ORS 813.135 and ORS 813.136, in combination, include and implement a *legislative* determination that a driver's refusal to perform FSTs is not admissible under ORS 813.136 unless that person was advised, as prescribed by ORS 813.135, of the consequences of refusal. *See Schutz v. La Costita III, Inc.*, 256 Or App 573, 589, 302 P3d 460, *rev den*, 354 Or 148 (2013) (recognizing that Supreme Court's conclusion was "pure *dicta*," but following it because it would be "imprudent for us to ignore it"). That is, "the applicable statutes *themselves* require suppression of the evidence." *Bloom*, 216 Or App at 251 (emphasis added). Accordingly, ORS 136.432 did not control, and the trial court, consequently, erred in admitting the evidence of defendant's refusal.

Finally, based on our review of the totality of the record—and the state properly does not contend otherwise—the admission of that evidence was not harmless.

Conviction for driving under the influence of intoxicants reversed and remanded; otherwise affirmed.