Syllabus.

# STATE *v.* WINTZINGERODE.

### INDICTMENT—SUFFICIENCY OF.

An indictment for murder, in the form provided by section seventy of the criminal code, is sufficient.

### MURDER—DEGREES OF.

If the acts specified in the indictment constitute the crime of murder in the first degree, under section 506 of the criminal code, it will support a conviction in either degree.

### EVIDENCE—COLLATERAL OFFENCES.

Evidence, if relevant to the issue in a criminal action, is not rendered inadmissible for the reason that it tends to prove the defendant guilty of collateral offenses.

### INTENT—HOW MAY BE SHOWN.

Evidence of the defendant having procured two guns shortly before the murder, which were found soon after, secreted in the straw, under the head of his bed, in a room in a barn, in which he usually slept, was properly admitted to show his intent, although only one of them could have been used in perpetrating the crime. Such evidence would have been admissible though neither of them had been actually used.

### CIRCUMSTANCES ADMISSIBLE.

Evidence that the defendant was seen the day after the murder, in possession of a certain sum of money, in connection with other evidence that he did not possess so great an amount prior thereto, but that deceased did have a similar amount of money of the same kind only a few days before his death, was admissible to connect the defendant with the commission of the murder. It might, in connection with the other evidence offered by the state, justify an inference that it was the fruits of that crime, and the motive for its commission.

### CONFESSIONS, ADMISSIBILITY' OF—COMMON LAW RULE PREVAILS.

Section 169 of the criminal code has not altered the rule of the common law as to the inadmissibility of confessions induced by the influence of hope, applied to the prisoner's mind by an officer of the law having him in custody on a charge of crime.

When a confession has been improperly obtained by such officer of a prisoner in his charge, by such means, a subsequent confession of similar facts, made by the prisoner while still in custody, upon the same charge, should be excluded, unless facts or circumstances are shown which fairly justify the inference that the influence under which the original confession was obtained, has ceased to operate upon the prisoner's mind.

Whether such influence has ceased is a question of fact to be determined by the court below in which the trial is had, and it is only where the record fails to show that any satisfactory evidence was before that court on the question, that this court will disturb its determination.

**10**

Appeal from Washington.

On the 8th day of January, 1880, Jacob Swanger was killed in Washington county, Oregon, and on the 25th day of May ensuing, Henry Wintzingerode, the appellant, was indicted by the grand jury of said county for the crime of murder, for causing the death of said Jacob Swanger. The body of the indictment is as follows :

" Henry Wintzingerode is accused by the grand jury of the county of Washington, by this indictment, of the crime of murder, committed as follows: The said Henry Wintzingerode, on the 8th day of January, A. D. 1880, in the county of Washington, in the state of Oregon, purposely and of deliberate and premeditated malice, killed Jacob Swanger, by then and there shooting him and beating him on the head with a gun, and by then and there striking and beating him on the head with an axe, contrary to the statutes in such cases made and provided, and against the peace and dignity of the state of Oregon."

The appellant being then in custody, was arraigned, and a motion to quash the indictment, and also a demurrer having been overruled by the court, plead " not guilty " to the indictment.

The case was tried at the May term of the circuit court for Washington county, 1880, and a verdict of guilty of murder, in the first degree, returned by the jury, upon which verdict sentence of death was passed by the court, June 10, 1880. From this judgment Wintzingerode has brought this appeal. The other necessary facts are given in the opinion.

*T. B. Handley, E. Mendenhall* and *J. M. Bower,* for appellants.

The indictment is insufficient, because it is not direct and certain as to the crime charged. (Crim. Code, secs. 70–72.) Nothing can be taken by intendment, and descriptive words of a penal statute must be strictly followed. The crime charged is unknown to our statute. (Crim. Code, secs. 506,

507.)    The indictment and verdict will not sustain the judgment.    (Crim. Code, sec. 179; *State* v. *Gaffrey*, 3 Wis., 369; *People* v. *Tully*, 6 Mich., 273; Bishop's Crim. Pr., sec. 565, and cases cited.)

The first confession of appellant was made to officer Mead, and was rightly excluded.    (*People* v. *Backus*, 5 Cal., 275.)

Subsequent confessions were erroneously admitted in evidence, as no warning of their consequences had been given the appellant, and the original improper influence had not ceased to operate upon his mind.    (1 Whar. Crim. Law, sec. 694.    *The People* v. *Jim Ti*, 32 Cal., 60.; *State* v. *Chambers*, 39 Iowa, 179; *Commonwealth* v. *Harman*, 4 Penn. St., 269; *State* v. *Jones*, 54 Mo., 478; *Commonwealth* v. *Curtis*, 97 Mass., 574.)

The state was erroneously allowed to prove that before the murder appellant stole a gun from the deceased, and another from an unknown party, and that they were found in his room.    This evidence does not fall within any of the exceptions excluding proof of collateral or distinct crimes.    (4 Hump., 27; 6 Park., 71.)

*John F. Caples, District Attorney, M. F. Mulkey and Thomas H. Tongue*, for the state.

In order to prove deliberation the state had a right to show that the defendant disarmed his victim, and provided himself with the instrument of crime beforehand; and because his manner of doing this was criminal, it does not render the testimony incompetent.    The question about money was competent to prove that defendant was in possession of the fruits of his crime, and to show his motive and purpose in killing Swanger.

To exclude a confession it must be the product of fear produced by threats.    (Crim. Code, sec. 169, p. 362; *State* v. *Potter*, 18 Conn., 166; *State* v. *Freeman*, 12 Ind., 100.)

The existence of fear must be determined by the judge, and

the admission is in his discretion. (1 Greenleaf on Evidence, sec. 219.)

The threat must be sufficient to overcome the mind of the prisoner, in the judgment of the court. (1 Greenleaf on Evidence, 220.)

Our statute, sec. 169, page 362, modifies the common law rule essentially. The evident intention is to allow all confessions of guilt to be given in evidence that are not produced by threats. (*State* v. *Freeman*, 12 Ind., 100; 18 Am. Decis., 404.)

By the Court, WATSON, J.:

The first question to be considered is in regard to the sufficiency of the indictment. It was raised by the appellant in the court below by demurrer and motion. That court overruled the demurrer and motion, and these rulings are assigned as error.

In the caption or introductory part of the indictment, the crime whereof the appellant was accused was murder—the degree not being stated. But the succeeding portion charges the commission of acts by appellant which, under our statute, constitute murder in the first degree. (Sec. 506, Crim. Code.)

The indictment is in the form permitted by the criminal code, and is, in our judgment, sufficient. Section 69 provides that an indictment shall contain:

1. The title of the action, specifying the name of the court to which the indictment is presented, and the name of the parties.

2. A statement of the facts constituting the offense, in ordinary and concise language, without repetition, and in such manner as to enable a person of common understanding to know what is intended.

The specification in this case clearly shows the crime charged, without reference to the description in the caption, and fixes the degree. But indictments in this form are not only author-

ized by statute, but have been held sufficient by the highest courts in this and other states. (*State* v. *Dodson*, 4 Oregon, 64; *State* v. *Eno*, 8 Minn., 220.)

Bishop lays down the proposition that, "in those states where murder is by statute divided into degrees, a defendant, on a general indictment, or an indictment for murder in the first degree, may be convicted of the offense in either degree, if the indictment is in such form as to embrace all in its actual allegations—the statute making it necessary for the verdict to state which degree." (1 Bishop's Crim. Law, sec. 797.)

Section 183 of the criminal code of this state makes it necessary for the verdict to state the degree, if the defendant is found guilty of any degree inferior to that charged in the indictment.

The next objection urged by the appellant here, is to the rulings of the court below, admitting certain evidence offered by the state, on the trial, in relation to two guns and some money, alleged to have been discovered in the appellant's possession soon after the murder of Swanger.

According to the bill of exceptions in the record, during the trial, and after testimony had been given tending to prove that deceased was killed by blows inflicted by a dull, heavy instrument, and that a rifle, then in court, was subsequently found near defendant's bed, in a barn in which defendant usually slept, a witness, named Delano, was called by the state and allowed to testify, over appellant's objections, that this rifle belonged to the deceased, but had been taken away from the house of deceased at the time it was robbed, which was about three weeks before he was murdered. The same witness also testified that the deceased had, a few days before his death, two twenty-dollar gold pieces and some silver in a common buckskin purse.

Another witness, named Freeman, also on behalf of the state, was permitted to testify that the rifle mentioned by Delano, another gun and a shot-pouch were found together, in and under the straw, at the head of appellant's bed, in the

room in which appellant usually slept, and that the witness did not know who the owner of the latter gun was.

Chistopher Dietz, another witness for the state, testified that appellant had lived with and worked for him most all the time for two years preceding the murder of Swanger; that he never had any gun during that time, within the knowledge of witness, and that the first time witness knew of his having any gun was after the murder, when two guns were found in his room.

The two guns mentioned by the witness, Freeman, were then exhibited to the witness, Dietz, identified by him as those having been found in appellant's room soon after the murder, and were given in evidence to the jury.

Deitz also testified that appellant had only two or three dollars before the murder.    Mr. Dietz and the two Webber girls, also witnesses for the state, testified that he had money in a purse, on the evening of the day following Swanger's death; the Webber girls testifying that they saw him on the day following the murder, with something over thirty-two dollars in his possession.

All of this evidence was objected to by appellant, and exceptions taken to its admission.

Appellant claims that this evidence tended to prove that he was guilty of other offenses not connected with the commission of the crime of murder, for which he was being tried, and that his defense before the jury was thereby greatly prejudiced, to the serious injury of his substantial rights.

It is not contended that if the evidence admitted and objected to was relevant to the issue, on the trial of the indictment against appellant for the murder of Swanger, its admission was error, although it did incidentally tend to disclose the commission of other distinct offenses.    (1 Wharton's Crim. Law, sections 647, 650.)

But appellant urges with great earnestness, that the facts established, or attempted to be established, by this evidence,

were not relevant, and afforded no inference as to his guilt in regard to the murder of Swanger.

But we think they were relevant, and that the evidence was properly admitted. Any evidence tending directly to show that the appellant was, at the time of the alleged crime, in possession of the instruments used in perpetrating it, or if the instruments used could not be precisely identified, then of the instruments capable of being used, or adapted for use in its commission, in the manner proven, was admissible. (3 Greenleaf on Evidence, secs. 32 and 33; *People* v. *Larned*, 3 Selden, 445; *Commonwealth* v. *Williams*, 2 Cush., 586.)

It is no valid objection to this evidence that it shows the appellant had two guns in his possession, while he could only have used one in committing the crime. The evidence given in the bill of exceptions does not disclose which was used, but if it had the admission of the evidence would still have been proper.

Finding both guns together, in the prisoner's possession, so soon after the murder, and evidently secreted, might, in connection with the other evidence in this case, justify the jury in concluding that he had obtained possession of them and collected them together, in contemplation of committing the murder of which he was accused. Any act of preparation to commit a crime is admissible on the question of intent.

So if neither of the guns in evidence had actually been used in committing the murder, but the circumstances under which the prisoner obtained and kept possession of them would justify the inference that he had obtained them for that purpose, such circumstances might be shown as bearing on the question of his intent.

It was not error either to allow the state to prove that one of these guns belonged to Swanger, and was taken away from his house at the time it was robbed, only a short time before the murder. Finding it in the prisoner's possession so soon after the murder, secreted in the manner proven, in connection with the evidence concerning the robbery of the house,

and theft of the gun, only some three or four weeks previous, afforded a very strong inference for the jury that the prisoner obtained it at the time of the robbery of the house, and must have had it in his possession at the time of the murder.

The evidence of Christopher Dietz certainly tended to prove that the prisoner must have procured the two guns only a short time before the murder, and kept them secreted. This was the object of his testimony—not to prove that the prisoner had committed other distinct crimes to obtain the guns.

The testimony in relation to the money stands even on stronger grounds. Its tendency was to connect the prisoner directly with the commission of the murder, and also to disclose a motive for its commission. It was for the jury to consider whether or not the money which was seen in his possession on the day succeeding the murder of Swanger, was the fruits of that crime.

We come now to the questions presented by the exceptions, taken by appellant at the trial, to the admission of evidence of his confessions, made while in custody, upon the charge of having murdered the deceased.

The difficulty in the way of a satisfactory determination of these questions, is greatly augmented by the serious doubts we have felt as to the proper effect to be given to our own statute upon the subject.

Section 169 of the criminal code, provides:   "A confession of a defendant whether in the course of judicial proceedings, or to a private person, cannot be given in evidence against him when made under the influence of fear produced by threats;   nor is a confession only sufficient to warrant his conviction without some other proof that the crime has been committed."

It is insisted on behalf of the State that this section has altered the common law rule on the subject, and that only those confessions can now be excluded which have been "made under the influence of fear produced by threats."

In support of this view the case of the *State* v. *Freeman*, 12 Ind., 100, and *State* v. *Guild*, 18 Am. Decis., 404, have been cited. We do not find either to be in point. The former was decided on a statute essentially different from ours. It declares that "the confessions of the defendant. made under inducements, with all the circumstances, may be given in evidence against him, except when made under the influence of fear produced by threats." The latter treats of the subject on common law principles solely.

A statute identical with our own, in the state of Minnesota, does not seem to have been considered by the courts of that state as in any manner changing the common law rules as to the admissibility or inadmissibility of confessions, although we have not been able to find any direct decision upon the question. Long after the statute was enacted, the supreme court of Minnesota, in the case of the *State* v. *Staley*, 14 Minn., 110, referring to the common law authorities, say: "The rule seems well settled that if any advantage is held out, or harm threatened of a temporal or worldly nature, by a person in authority, the confession induced thereby must be excluded."

Nor have we been able to find where the common law rules have been modified or abrogated in any state except Indiana, under its peculiar statute, to the extent of admitting confessions induced by promises of favor, by officers of the law, made to prisoners in their custody.

It is obvious that the inducements to confess, contained in promises, may be as powerful as any which threats could convey, where both come from the public officer having the prisoner in his custody and under his control.

But apart from such considerations, we are not aware of any principle of law which would justify the construction contended for by respondent.

Here is a declaratory statute, couched in affirmative words wholly, and, unless negative words must be implied, it does not abrogate any rule of common law relating to the admis-

sibility of confessions in criminal trials. (Potter's Dwarris on Statutes and Constitutions, 56.)

Is there any ground here, then, for employing negative words? We think not. The statute purports only to extend to one class of confessions, viz.: Those induced by threats. It does not even mention the other class, to wit : Those, induced by promises or intimations of favor from persons in authority and having the party confessing in their custody.

These two classes are distinct and rest on different foundations; and we are not able to perceive how one class can be effectual by implication merely, from legislation which only affirms the principles of the common law as to the other class.

In *Jackson* v. *Bradt*, 2 Caines, 169, it was held that " if a statute, without any negative words, declares that all former deeds shall have, in evidence, a certain effect, provided such and such requisites are complied with, this does not prevent their being used as testimony in the same manner as if the act had never passed."

Upon the whole we are satisfied that our statute is wholly affirmative and that the common law rules, governing the admissibility of confessions are still in force in this state.

This brings us to the consideration of the nature of the inducements held out to appellant by the officers of the law, while he was in their custody, and in consequence of which he maintains his confessions were made, which were afterwards permitted to be proven against him on his trial. The language, used by officer Mead to appellant, then a prisoner in his custody, under arrest, as shown by the bill of exceptions, was: " It would be better for you, Harry, to tell the whole thing." Thereupon the prisoner made his first confession about the killing of Swanger.

Upon this state of facts the court below excluded the testimony. But another witness, named Cameron, was offered by the state, who testified that he was the officer in charge of the county jail at the time of appellant's arrest. That the first or second day after the arrest, and while appellant was a

prisoner in his charge, witness said to him: "This is a pretty bad scrape you have got into. How did it happen?" In reply the prisoner answered: "That he went to Swanger's house to borrow money; had a gun with him; knew Swanger some time. Swanger asked me in, and we talked a while, and I asked him to loan me some money; Swanger then got mad and ordered me to leave. He accused me of having his gun; I denied it; I started to leave, and deceased picked up an axe and ran after me with it. I was going away from the house, and deceased was trying to kill me with the axe, and I shot and struck deceased with the gun; I killed Swanger in self-defense. I took the body in the house. In going away from the house I passed the spot where Swanger fell, and seeing a purse on the ground, that had fallen from his pocket, I picked it up, thinking I might have it and take it home."

This testimony was admitted over the appellant's objections.

Dr. Bailey, another witness for the state, also testified to confessions made to him by the prisoner while in custody, and soon after the confession was made to Cameron.

Appellant made the same objections to this testimony, but they were overruled, and the testimony admitted.

We have no reason to doubt the correctness of the ruling of the circuit court rejecting the testimony of officer Mead as to the confession made to him by the appellant.

There seems to be no conflict among the numerous authorities as to the rule, that confessions made by a prisoner while in custody, and induced by the influence of hope or fear, applied by a public officer having the prisoner in his charge, are inadmissible in evidence against him.

The precise form of words in which the inducement is presented to the prisoner's mind is immaterial. It is sufficient if they convey to him the idea of temporal benefit or disadvantage, and his confession follows in consequence of the hopes thereby excited.

Accordingly, where an officer said to his prisoner, immediately after arresting him: "If you are guilty you had better

own it," the confession made in reply was excluded. (*State v. York*, 37 N. H., 175.)

Saying to the prisoner that "it will be warm for him if he does not confess," or that it will "be better for him if he does," is sufficient to exclude the confession, from constant experience. (2 East P. C., 659; *Commonwealth v. Curtis*, 97 Mass., 578.)

Mr. Greenleaf says: "Before any confession can be received in evidence in a criminal case, it must be shown that it is voluntary. The course of practice is to inquire if the prisoner had been told that it would be better for him to confess, or worse for him if he did not confess, or whether language to that effect had been addressed to him." (Greenleaf on Evidence, sections 219, 222, 223; *Commonwealth v. Tuckerman*, 10 Gray, 190, 191.)

But it is needless to multiply citations on this point. A question equally as important arises upon the admission of Cameron's testimony, showing the confession of appellant to him. Appellant claims, and the authorities fairly support the position, that the confession having been originally obtained by officer Mead, improperly, through the inducements held out by him, his subsequent confessions to Cameron and Dr. Bailey, and others, were inadmissible, without showing that the motives for his original confession had ceased to operate.

Mr. Greenleaf cites, with evident approbation, the rule laid down in the *State v. Guild*, 18 Am. Decis., 404, above referred to on this subject. In this case, upon much consideration, the rule was stated to be, that although an original confession may have been obtained by improper means, yet subsequent confessions of the same or of like facts, may be admitted, if the court believes that from the length of time intervening, or from proper warning of the consequences of confession, or from other circumstances, that the delusive hopes or fears, under the influence of which the original confession was obtained, were entirely dispelled. And adds, citing *Roberts' case*, 1 Denio R., 259, 264, "in the absence of any such cir-

cumstances, the influence of the motives proved to have been offered, will be presumed to continue and to have produced the confession, unless the contrary is shown by clear evidence, and the confession will therefore be rejected." (1 Greenleaf on Evidence, section 221; to the same effect, *State* v. *Jones*, 54 Mo., 478; 1 Wharton's Criminal Law, section 594; *Commonwealth* v. *Harman*, 4 Penn. St., 269; *Van Buren* v. *State*, 24 Miss., 512.)

The circuit court had the undoubted right to try the question whether the original influence had ceased when the subsequent confessions were made, and if the record before us disclosed any fact or circumstance to justify the belief that they had in fact ceased, when such subsequent confessions were made, we should not disturb its determination. But no such facts or circumstances appearing by the bill of exceptions, which purports to give all the testimony in substance, the subsequent confession to Cameron being on the same or at farthest the day succeeding the original confession to officer Mead; the prisoner being still in custody, on the same charge; the inducement to make the original confession being still in full force and not withdrawn, and no warning having been given, we cannot escape the clear and firm conviction that the same influences which induced the original confession to officer Mead, and which the circuit court, with better facilities for arriving at a correct conclusion than this court possesses, held inadmissible, because it was so induced, were in full operation upon the appellant's mind when subsequent confessions were made, and that therefore these confessions should have been excluded on the trial, and not allowed to be given in evidence against him.

For this reason we are of the opinion that the judgment of the circuit court must be reversed and a new trial had.

Judgment reversed and a new trial ordered.