Argued and submitted December 8, 2009, affirmed September 1, 2010, petition for review denied January 14, 2011 (349 Or 601)

Robyn M. BELINSKEY,
*Plaintiff-Appellant,*

*v.*

Julia R. CLOOTEN,
*Defendant-Respondent.*

Multnomah County Circuit Court
080507057; A140228

239 P3d 251

Willard E. Merkel argued the cause for appellant. With him on the briefs was Merkel & Associates.

Wendy M. Margolis argued the cause for respondent. With her on the brief were Julie A. Smith and Cosgrave Vergeer Kester LLP.

Before Landau, Presiding Judge, and Schuman, Judge, and Sercombe, Judge.

SCHUMAN, J.

## SCHUMAN, J.

■     This case requires us to construe ORS 12.220, commonly referred to as a "saving statute," which provides that, if an action is first filed within the statute of limitations and then "involuntarily dismissed without prejudice on any ground not adjudicating the merits of the action," a new action may be filed within 180 days "after the judgment dismissing the original action is entered in the register of the court," notwithstanding that the statute of limitations has run during the interim.[1] Here, the trial court dismissed plaintiff's personal injury action as a sanction because plaintiff failed to attend an appointment with an independent medical examiner. The dismissal was involuntary, without prejudice, and it did not address the merits of the personal injury claim. That dismissal was "entered in the register" of the circuit court. Plaintiff appealed. We affirmed, *Belinskey v. Clooten*, 214 Or App 172, 164 P3d 1163 (2007), *rev den*, 344 Or 194 (2008). The Supreme Court then sent the appellate judgment back to the trial court, where it was also "entered in the register" pursuant to ORS 19.450(3). Within 180 days after the *appellate* judgment from the Supreme Court was "entered in the register" of the circuit court, but long after 180 days had elapsed since the original *trial court* judgment of dismissal had been entered in the circuit court register, plaintiff refiled her claim. By that time, of course, the statute of limitations had run, and defendant moved for summary judgment on that ground. The trial court granted defendant's motion, rejecting plaintiff's argument that, because she

---

[1] ORS 12.220 provides, in part:

"(1) Notwithstanding ORS 12.020, if an action is filed with a court within the time allowed by statute, and the action is involuntarily dismissed without prejudice on any ground not adjudicating the merits of the action, or is involuntarily dismissed with prejudice on the ground that the plaintiff failed to properly effect service of summons within the time allowed by ORS 12.020 and the statute of limitations for the action expired, the plaintiff may commence a new action based on the same claim or claims against a defendant in the original action if the defendant had actual notice of the filing of the original action not later than 60 days after the action was filed.

"(2) If, pursuant to subsection (1) of this section, a new action is commenced in the manner provided by ORS 12.020 not later than 180 days after the judgment dismissing the original action is entered in the register of the court, the new action is not subject to dismissal by reason of not having been commenced within the time allowed by statute."

refiled within 180 days of the entry of the *appellate* judgment, her action was "saved" by ORS 12.220. This appeal ensued. The question presented is what "the judgment dismissing the original action" means in ORS 12.220(2). Defendant contends that, as the trial court ruled, the term refers to the first judgment—the trial court's original judgment dismissing the action before appeal. Plaintiff contends that the term also includes the judgment entered in the trial court register after the appellate mandate issues. We agree with defendant and therefore affirm.

We acknowledge that plaintiff's arguments have considerable force. Focusing first on the text and context of ORS 12.220, she notes that an appellate judgment, like a trial court judgment, is entered in the trial court register as a "judgment," not an "appellate judgment." ORS 19.450(3). She also points out that "dismiss" commonly means "to put (a legal action or a party) out of judicial consideration : refuse to hear or hear further in court." *Webster's Third New Int'l Dictionary* 652 (unabridged ed 2002). Thus, she concludes, an action is not "dismissed" until it has run its course; when a party files an appeal, the appellate court acquires jurisdiction, ORS 19.270(1), the trial court loses jurisdiction for most purposes, ORS 19.270(6), and the case is not "put out of judicial consideration" until the appellate judgment issues and is entered in the trial court register as a dismissal. Further, a "judgment" is the "concluding decision of a court on one or more requests for relief in one or more actions, as reflected in a judgment document." ORS 18.005(9). Because a trial court judgment of dismissal does not "conclude" an action that is appealed, the judgment referred to in ORS 12.220 must include the final judgment in such a case.

Turning to the legislative history, plaintiff cites the oral and written testimony presented to the Senate Judiciary Committee on behalf of the Oregon Law Commission "Saving Statute" Work Group, which drafted the statute. Minutes, Senate Committee on the Judiciary, HB 2284, Tapes 126A & 127A (Public Hearing, May 12, 2003); Exhibit D (Oregon Law Commission Saving Statute Work Group Report); Exhibit E (written testimony of Prof Maury Holland). That testimony,

she argues, demonstrates that one of the purposes underlying the statute was to avoid deciding cases on procedural grounds instead of the merits.

In the final analysis, however, plaintiff's arguments are not well taken. The statute provides that a plaintiff may refile an action when it is "involuntarily dismissed without prejudice." That language logically refers to a proceeding at the trial court level. Trial court judges "dismiss without prejudice" and, although appellate courts on rare occasions "dismiss" an appeal, ORS 19.410, they more typically "affirm, reverse or modify" trial court decisions, ORS 19.420(1). Additionally, the term "dismiss" as a legal term of art means "[t]o send (something) away; specif., to terminate (an action or claim) without further hearing, esp. *before the trial* of the issues involved." *Black's Law Dictionary* 502 (8th ed 2004) (emphasis added). Again, because a dismissal usually occurs "before the trial," not after a trial and appeal, ORS 12.220 likely refers exclusively to the trial court's pretrial judgment of dismissal.

■ That likelihood is bolstered by consideration of the 2003 statute's context, which includes wording changes between that version and its predecessor. *See Krieger v. Just*, 319 Or 328, 336, 876 P2d 754 (1994) (wording changes are a part of the context of the present version of the statute being construed). The 2003 statute replaced a version that provided:

> "[I]f an action is commenced within the time prescribed therefor and the action is dismissed upon the trial thereof, *or upon appeal*, after the time limited for bringing a new action, the plaintiff, or if the plaintiff dies and any cause of action in the favor of the plaintiff survives, the heirs or personal representatives of the plaintiff, may commence a new action upon such cause of action within one year after the dismissal or *reversal on appeal*; however, all defenses that would have been available against the action, if brought within the time limited for the bringing of the action, shall be available against the new action when brought under this section."

*Former* ORS 12.220 (2001) (emphasis added). We find it significant that the older statute expressly provided that a

plaintiff could refile a claim after both an appeal and a dismissal by the trial court. The change is significant because new language in a statute ordinarily signals a change in the statute's meaning. *State v. Click*, 305 Or 611, 616 n 5, 755 P2d 693 (1988). Here, we have no reason to conclude otherwise. We regard the absence of the appeal language as strong support for the trial court's interpretation of the statute.

The statute's legislative (and prelegislative) history also support affirmance. The current version resulted from amendments added in 2003 at the instigation of the Oregon Law Commission. According to the commission's work group dealing with the statute, the 2003 amendments were intended to remedy two defects. First, the existing statute did not expressly state that it applied only when the original action was dismissed on a procedural, as opposed to a substantive, ground, although that was how the courts were interpreting it. Second, the statute could not be applied where the original action was dismissed due to insufficient alias service, which was the most common procedural defect. *See* Minutes, Oregon Law Commission, Nov 22, 2002. Professor Maury Holland, chair of the work group, explained that "the bill draft is a modest change but one that would reduce the number of appeals." Minutes, Oregon Law Commission, Oct 11, 2002 (comment of Prof Maury Holland). Commission member Hans Linde offered his thanks to the work group, noting that "their work will reduce appeals, which is a great service." Minutes, Oregon Law Commission, Nov 22, 2002 (comments of Prof Hans Linde).

The only testimony heard during the legislative process itself was from Professor Holland, who presented the report that the commission had developed on the amendments and explained why they would reduce the number of appeals. His report explained:

> "In addition [to] affording greater assurance that cases are decided on their merits, rather than being dismissed because of technical defaults even when those can be cured—in other words, assuring that people claiming to have been injured get their day in court—amended 12.220 should result in at least one other significant benefit to the Oregon court system.

"Several years [ago] I began to notice, in reading the judicial advance sheets, how many cases came up on appeal where the single issue concerned sufficiency of service. For the following reason, amended 12.220 can be expected to reduce, though not totally eliminate, such appeals, with the delay and expense to litigants, and the consumption of judicial resources, they entail. The reason is that * * * when a trial court dismisses an action for insufficient service, rather than appeal, which is now plaintiff's only option, plaintiffs' lawyers will seek to make sufficient alias service, which will often, though not always, be practicable. The result would be to reduce the burden of these single-issue appeals on the appellate courts, especially the already overburdened court of appeals."

Testimony, House Judiciary Committee, HB 2284, Feb 11, 2003, Ex 1 (statement of Prof Maury Holland). Plaintiff argues that this language suggests that the legislature's intent was to limit only appeals from dismissals based on faulty service. We find that argument unpersuasive. Although Professor Holland may have discussed limiting appeals only with respect to service of process errors, the language of the statute does not distinguish between those errors and others, except for limiting the number of days a plaintiff has to refile. Adopting plaintiff's interpretation in order to accommodate errors unrelated to service of process would negate the statute's obvious legislative purpose. Put another way, plaintiff argues that defendant's interpretation forces her to make the risky choice between an appeal and refiling. That, we conclude, is exactly what the statute was intended to do.

Thus, in order to be "saved" by ORS 12.220 from the operation of the statute of limitations, plaintiff needed to have refiled her claim within 180 days of when the trial court entered its original, preappeal judgment. Because plaintiff failed to do so, the trial court did not err in granting defendant's motion for summary judgment.

Affirmed.