Argued and submitted July 30, 2010, affirmed in part, reversed in part, and remanded for further proceedings May 18, petition for review allowed October 6, 2011 (351 Or 216)

**STATE OF OREGON,**
*Plaintiff-Appellant,*

*v.*

**LANCE FRANKLIN POWELL,**
*Defendant-Respondent.*

Benton County Circuit Court
CM0621169; A141129

256 P3d 185

Douglas F. Zier, Assistant Attorney General, argued the cause for appellant. With him on the brief were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

Kenneth A. Kreuscher, Deputy Public Defender, argued the cause for respondent. With him on the brief was Peter Gartlan, Chief Defender, Legal Services Division, Office of Public Defense Services.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Landau, Judge pro tempore.

SERCOMBE, J.

## SERCOMBE, J.

Defendant was charged with aggravated first-degree theft. ORS 164.057. The state appeals from a pretrial order suppressing defendant's self-incriminating statements and the physical evidence obtained as a result of those statements. *See* ORS 138.060(1)(c) (allowing state appeal from an "order made prior to trial suppressing evidence"). Defendant made two confessions, first to private investigators and then to the police, in the course of successive interviews. The issue on appeal is whether those confessions can be given in evidence in light of ORS 136.425(1), which provides for exclusion of confessions or admissions of a defendant where "made under the influence of fear produced by threats." The state contends that defendant's initial confession to private investigators should not have been suppressed under ORS 136.425(1) because the statute applies only to governmental officials and not private investigators. The state further argues that, even if the first confession is inadmissible, defendant's subsequent confession to police was sufficiently attenuated from the first confession and, accordingly, it should not have been suppressed. We conclude that the trial court properly suppressed the first confession, but that the second confession should have been admitted into evidence. Thus, we affirm in part and reverse in part.

We are bound by the trial court's express and implied findings of fact where there is evidence in the record to support them, but we assess anew whether those findings and the record on review establish that defendant's statements were involuntary under the statute. *State v. Foster*, 303 Or 518, 529, 739 P2d 1032 (1987); *State v. Aguilar*, 133 Or App 304, 307, 891 P2d 668 (1995).

We state the facts consistently with those standards of review. Defendant was employed as a courier for FedEx. A large number of packages were missing from defendant's worksite, and the company initiated an investigation. As part of that inquiry, two FedEx investigators, Ladd and Lewis, interviewed defendant in a conference room at the FedEx offices.[1] The interview lasted 30 minutes. Ladd questioned

---

[1] The interview was tape-recorded and admitted into evidence at the suppression hearing. Defendant was the only person to testify at the hearing. No other evidence was admitted.

defendant for the first half of the interview. During that time, defendant denied any knowledge of or involvement in the disappearance of the packages. Lewis then intervened, stating:

> "It's apparent that you took this stuff, so now we're at a crossroads, okay? * * * *We're at a point where either we handle it in-house here, in FedEx, or we can turn everything we have over to the [police department], and then they handle it from there.* Now if you choose that route, there's nothing you can do. They'll be going to get search warrants for your house, for your mother's house. They'll go through all of your stuff. It's just gonna be a big mess, okay? * * *

> "At this point, our base concern here at FedEx is we want to know, we need to make a customer happy. And if we can make the customer happy, then they don't come back on [defendant], okay? And I don't think you're a bad guy, okay? *If I had thought you were a bad guy I would've taken all this stuff and we would've given it to the [police department] and said, 'You gotta jack him up, we're done with him,' okay? I don't feel that way.* You've got a lot of stuff going on in your life right now, and I know it. People do boneheaded things, okay? But *where we go now is what's going to decide your future.* * * * *Nobody but who's in this room needs to know.*"

(Emphases added.) Defendant then made inculpatory statements and agreed to take the investigators to his house to recover some of the stolen property.

On the way to his house, defendant expressed second thoughts about proceeding. Nonetheless, one of the investigators reassured defendant, stating, "Your continued cooperation with us is appreciated. This is going to make sure that we keep the D.A. out of this." Defendant allowed the investigation to continue. After stolen property was recovered from his house, the investigators informed defendant that he needed to return to the office to provide a written statement and that he would then be free to leave. At the office, defendant wrote a statement with assistance from Ladd and Lewis.

According to defendant's testimony, Ladd then said, "Listen, I need you to give a statement to the police. We just need a third party to kind of document what's been said here, what's going on. * * * It doesn't mean you're being arrested." A City of Corvallis uniformed police officer, Officer Glock,

entered the conference room. Ladd remained in the room during police questioning.[2]

Glock indicated that she knew what was going on and was aware that Ladd and Lewis had recovered property from defendant's house. Glock advised defendant of his *Miranda* rights, telling him that they were just "a matter of housekeeping, * * * just a formality." When she asked defendant if he knew why the police were present, defendant answered, "Probably to arrest me." When asked why he made that statement, defendant explained that he "wanted to see if [the officer] said * * * that basically the deal was off with the FedEx representatives, or see if she basically confirmed what they were saying, that 'no, I'm not necessarily going to arrest you. I'm just here to get a * * * third party statement documentation.'"

Glock responded to defendant's supposition of impending arrest, "Not necessarily. * * * That could be a possibility but it's ultimately up to your company how they want to handle this." Ladd nodded along with the officer's statement.

Defendant subsequently repeated his inculpatory statements to Glock, and she sought consent to search defendant's house. Defendant told Glock that all of the stolen property had been recovered and did not immediately consent to a search. However, a second officer joined the interview and told defendant that, if he consented, the police could ensure that defendant's wife and children would be away from the house at the time of the search. According to defendant, the officer stated, "If not, I have more than enough evidence from what's recovered in the other room there that we'll just go ahead and take you down to the jail, hold you there, we'll get a warrant, and then we'll show up over there with six or eight marked cars, have your family sit on the front lawn in front of all the neighbors while we search the house." Defendant then consented to the search.

---

[2] At least one FedEx investigator remained in defendant's presence throughout both interviews, even accompanying him to the restroom and drinking fountain.

The trial court suppressed all of defendant's inculpatory statements and the property recovered from his residence. The court concluded:

> "The question before the Court is whether or not defendant's confession was voluntary or in violation of statutory or constitutional protections. Based on the totality of the evidence presented at the suppression hearing, the court finds that defendant did not make a voluntary confession. The express and implied promises of immunity from criminal prosecution given to the defendant by the Fed Ex investigators render[ ] his statements to them involuntar[y]. Because there was not a sufficient break in time or location between the Fed Ex investigation interviews and the interview by law enforcement investigators, statements made by defendant in response to subsequent interrogation and evidence seized after his involuntary confessions must also be suppressed. Unsolicited statements by the defendant are admissible."

On appeal, the parties agree that there is no constitutional basis for excluding defendant's first confession, inasmuch as there was no state action to procure it.[3] The state contends that the trial court incorrectly excluded defendant's statement to the FedEx investigators as an involuntary confession under ORS 136.425(1). As noted, that statute provides that a confession or admission "cannot be given in evidence against the defendant when it was made under the influence of fear produced by threats." According to the state: (1) ORS 136.425(1) does not apply to confessions induced by promises of leniency but instead operates to exclude only confessions induced by threats; (2) the statute does not apply to confessions elicited by private persons; and (3) ORS 136.432, an antisuppression statute, bars the exclusion of evidence based on a statutory violation. We conclude that defendant's initial confession was properly suppressed under ORS 136.425(1).

■ The state's contentions about the scope of ORS 136.425(1) present questions of statutory construction. In construing a statute, we examine the text of the statute in

---

[3] *See* Or Const, Art I, § 12 ("No person shall be * * * compelled in any criminal prosecution to testify against himself."); US Const, Amend V ("No person shall * * * be compelled in any criminal case to be a witness against himself[.]").

context, along with any relevant legislative history, to discern the legislature's intent. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). ORS 136.425(1) (2007)[4] provides:

> "A confession or admission of a defendant, whether in the course of judicial proceedings or otherwise, cannot be given in evidence against the defendant when it was made under the influence of fear produced by threats; nor is a confession only sufficient to warrant the conviction of the defendant without some other proof that the crime has been committed."

The first part of that provision, by its terms, applies only to confessions or admissions "made under the influence of fear produced by threats." The statute makes no mention of confessions induced by promises of leniency. Nonetheless, the state's contention that ORS 136.425(1) applies only to confessions induced by threats and not those spurred by promises of leniency has been rejected in numerous cases, beginning with *State v. Wintzingerode*, 9 Or 153, 1881 WL 1363 (1881). In that case, the court held that, although the original predecessor to ORS 136.425(1) purported to extend only to confessions induced by threats, the statute was not intended to abrogate the common-law rule that applied also to confessions induced by promises of leniency. *Id.* at 161-62. Subsequent cases have reaffirmed that principle by stating that the statute incorporates the common-law rules on involuntary confessions. *See, e.g., Foster*, 303 Or at 525 (ORS 136.425(1), an expression of the common-law rules, prohibits statements made under the influence of threats or promises); *State v. Smith*, 301 Or 681, 690-93, 725 P2d 894 (1986) (explaining that "[w]e know of no case that interprets or applies ORS 136.425 independently of the common-law rules on confessions and admissions" and holding that the statute excludes confessions induced by threats or promises); *State v. Ely*, 237 Or 329, 332, 390 P2d 348 (1964) (under *former* ORS 136.540 (1957), *renumbered as* ORS 136.425 (1973/74), the

---

[4] Although ORS 136.425(1) was amended after the trial court's order in this case, those changes do not pertain to the portion of the text at issue on appeal. *See* Or Laws 2009, ch 875, § 1. Moreover, those amendments apply to crimes committed after January 1, 2010, and thus are inapplicable here. *Id.* § 3. Consequently, all references to ORS 136.425 are to the 2007 version of the statute, unless otherwise indicated.

state must show that a defendant's statement is made "without the inducement of either fear or hope"); *State v. Morris*, 83 Or 429, 439, 163 P 567 (1917) (citing an earlier codification of ORS 136.425(1) for the proposition that a confession, to be deemed voluntary and admissible, cannot be "induced by hope or fear"); *State v. Moran*, 15 Or 262, 265, 14 P 419 (1887) (explaining that "[i]t must be taken as settled in this State that [an earlier codification of ORS 136.425(1)] is only declaratory of the common-law rule" that a court must determine whether a "confession has been obtained by the influence of hope or fear applied by a third person to the prisoner's mind"); *Aguilar*, 133 Or App at 308 (confessions induced by promises of immunity "were involuntary as a matter of law" under both Article I, section 12, of the Oregon Constitution and ORS 136.425(1)). Consistently with those cases, we conclude that ORS 136.425(1) operates to exclude confessions induced by promises of leniency.

■ The state's second contention—that ORS 136.425(1) operates to exclude only confessions made to police or government officials and not those made to private persons—raises a more difficult question. On its face, the statute applies to any "confession or admission of a defendant" without regard to whether the statement is given to a private or a public actor. That, however, does not end the inquiry. We construe the statute's meaning in light of its pertinent legislative history. *Gaines*, 346 Or at 171-72. The state argues that, prior to 1957, the statute explicitly applied to statements made "in the course of judicial proceedings, or *to a private person.*" General Laws of Oregon, Crim Code, ch XXII, § 214, p 478 (Deady 1845-1864) (emphasis added); *see also* subsequent codifications. In 1957, the Legislative Assembly amended the statute to apply to incriminating statements made "in the course of judicial proceedings *or otherwise.*" *See* Or Laws 1957, ch 567, § 1 (emphasis added). The state contends that the removal of the phrase "or to a private person" and the substitution of "or otherwise" suggests a legislative intent to narrow the scope of the statute to apply only to confessions or admissions made to public officials, and not private persons. According to the state, ORS 136.425(1) should be construed consistently with that intent.

When construing a statute, we give words of common usage their plain and ordinary meaning. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993). "Otherwise" is a word of common usage. *State v. Snyder*, 337 Or 410, 424, 97 P3d 1181 (2004). "Otherwise" is variously defined as "in a different way or manner," "in different circumstances : under other conditions," "in other respects," or simply "NOT." *Webster's Third New Int'l Dictionary* 1598 (unabridged ed 2002). As used in the statute, then, "otherwise" indicates that an involuntary confession may be excluded whether it is made in the course of judicial proceedings or in different circumstances. Stated differently, the statute excludes involuntary confessions whether made during judicial proceedings or not. Thus, the terms of the statute are broadly inclusive. According to its plain meaning, the statute proscribes involuntary confessions of all kinds, without regard to when or to whom a confession was made.

Further contextual guidance can be found in the "corroboration" clause of the statute. *See* ORS 136.425(1) ("[N]or is a confession only sufficient to warrant the conviction of the defendant without some other proof that the crime has been committed.").[5] That provision, which requires corroboration of a confession as a predicate to conviction, draws no explicit distinction among the types of confessions to which it applies. Moreover, it has been applied to private confessions subsequent to the 1957 amendments. *See, e.g.*, *State v. Kelley*, 239 Or App 266, 243 P3d 1195 (2010) (holding that confessions made by the defendant to a friend and during a group therapy session were uncorroborated and thus were insufficient to warrant conviction). Presumably, both the voluntariness requirement and the corroboration requirement in ORS 136.425(1) operate consistently with each other; that is, in the absence of a contrary indication, a natural reading of the statute suggests that either both provisions apply to private confessions or both do not. *See Pete's Mountain*

---

[5] The 2009 amendments to ORS 136.425 moved that provision to a new subsection (2) of the statute and added that the corroboration requirement applied "[e]xcept as provided in ORS 136.427." ORS 136.427, in turn, lists crimes for which a "confession alone is sufficient to warrant the conviction of the defendant without some other proof that the crime has been committed[.]"

*Homeowners v. Ore. Water Resources*, 236 Or App 507, 518, 238 P3d 395 (2010), *rev den*, 350 Or 131 (2011) ("It is a long-standing principle of statutory construction that words may be assumed to be used consistently throughout a statute."); *see also Dept. of Human Services v. H. R.*, 241 Or App 370, 377, 250 P3d 427 (2011) (favoring internally consistent construction of statute). Thus, because the corroboration provision applies to confessions made to private persons, we infer that the voluntariness provision similarly applies to confessions made to private persons.

This inference is not undercut by the legislative history of ORS 136.425(1). The removal of the specific reference to "a private person" in 1957 could suggest an intent to abolish the statute's application to private confessions. *See Belinskey v. Clooten*, 237 Or App 106, 111, 239 P3d 251 (2010), *rev den*, 349 Or 601 (2011) (noting that wording changes are relevant context for purposes of statutory construction and that "new language in a statute ordinarily signals a change in the statute's meaning"). If that were the only change in text, that argument would be more credible. But the legislature made a companion change—that the statute applies to confessions made "otherwise" than in a judicial proceeding. That change signaled an intent to *broaden* the scope of the statute. The combination of both changes could give rise to a conclusion that the legislature intended to clarify that the statute applies not only to "judicial" or "private" confessions, but to any confession.

We also observe that the legislature, in its 1957 amendments, created subsection (2) of *former* ORS 136.540, *renumbered* ORS 136.425(2) (1973/74).[6] *See* Or Laws 1957, ch 567, § 1. That provision prohibits the admission of certain evidence of a defendant's conduct while "in the custody of a peace officer." If the legislature had intended subsection (1) to have the meaning advanced by the state—that is, if it intended to limit the ambit of ORS 136.425(1) to confessions made to public officials—it could have employed similarly precise language in that section as it did in subsection (2), instead of making the much broader reference to confessions

---

[6] The 2009 amendments to ORS 136.425 moved that provision to subsection (3). *See* Or Laws 2009, ch 875, § 1.

"otherwise" obtained. *See, e.g., Dept. of Transportation v. Stallcup*, 341 Or 93, 101, 138 P3d 9 (2006) (rejecting a construction that "would ignore the legislature's use of a different term within the same statute"); *Lane County v. LCDC*, 325 Or 569, 578, 942 P2d 278 (1997) (explaining that "we do not look at one subsection of a statute in a vacuum"); *State v. Keeney*, 323 Or 309, 316, 918 P2d 419 (1996) (noting that each term in a statute is assumed to have a distinct meaning).

The legislative history does not shed light on why the reference to "a private person" was dropped from the statute. *See Foster*, 303 Or at 525 (so stating). However, as noted, the voluntariness provision in ORS 136.425(1) was placed with a companion provision requiring corroboration of "a confession" without regard to whether it was a private confession. Moreover, that subsection is juxtaposed with another allied subsection, adopted at the same time, which narrowly and explicitly applies only to revelatory conduct of a defendant while "in the custody of a peace officer." In light of that context and the broad wording of ORS 136.425(1), we conclude that the legislature intended the statute to apply, as it had before, to confessions made to private persons.

That construction of ORS 136.425(1) is consistent with cases applying the statute subsequent to the 1957 amendments. Those cases suggest, albeit somewhat opaquely, that the statute applies in circumstances where an involuntary confession is elicited by private persons. *See Ely*, 237 Or at 331-35. In *Ely*, the defendant, a schoolteacher, was accused of sexually molesting one of his students. The defendant made a self-incriminating statement to school officials and the victim's parent after they promised not to prosecute the defendant, although they warned the defendant that his statement could be used against him. The state argued "that since the confession was made when the defendant was not in custody, and was made to private citizens, there is no question about its admissibility." *Id.* at 331. The court rejected that argument, explaining that "[a] correct interpretation of our own cases * * * would require the exclusion of an involuntary confession, whether made to law enforcement officers or to other persons." *Id.* at 332.

The court in *Ely* did not elucidate the legal basis for that proposition,[7] but it apparently relied upon *State v. Green*, 128 Or 49, 61-62, 273 P 381 (1929), *overruled in part on other grounds by State v. Brewton*, 238 Or 590, 395 P2d 874 (1964). *Green*, in turn, cited a common-law rule prohibiting the use of involuntary confessions induced by "persons not in authority." *Id.* Although it is difficult to discern *Green's* significance to ORS 136.425(1), the court in *Ely* seemed to recognize the ongoing viability of the rule in *Green* notwithstanding the existence of the statute. Thus, whatever the source for that rule, the *Ely* court did not view the amendments to *former* ORS 136.540 to be inconsistent with or to otherwise preclude application of a rule proscribing evidence of involuntary private confessions.

The Supreme Court discussed that issue again in *Foster*, 303 Or at 524-29. In that case, the defendant confessed to his involvement in a murder after police made references to community threats, *i.e.*, threats made by private persons, during the course of interrogating the defendant. The court declared that, although the legislative history of ORS 136.425(1) did not reveal why the reference to "a private person" was removed from the text, the statute was nonetheless an expression of the common-law rule against coerced confessions. *Id.* at 525. Consequently, it noted that the statute would prohibit the admission in evidence of an out of court confession induced "by anyone." *Id.* The case, however, involved a confession to the police that was induced by private persons. Thus, *Foster* did not construe the statute to prohibit involuntary confessions made to private persons.

*Foster* does hint that such a construction would be apt. The court contrasted the statutory rule on involuntary confessions with that of Article I, section 12, which "has no application to the action of private individuals who are not

---

[7] We note that the *Ely* decision presumably rested in part upon *former* ORS 136.540, which was cited for the general rule on involuntary confessions. *See Ely*, 237 Or at 332 ("In this state, confessions and admissions are initially deemed to be involuntary. Before either can be received in evidence, the state has the burden of showing that it was voluntarily made, without the inducement of either fear or hope. ORS 136.540[.]"). Furthermore, the defendant, in his brief, argued that his confession was involuntary under *former* ORS 136.540. Brief of Defendant-Appellant at 37-52, *State v. Ely*, 237 Or 329, 390 P2d 348 (1964).

employed by or acting under the orders or directions of, or in concert with," a governmental officer or agent. *Id. See also State v. Jancsek*, 302 Or 270, 284 n 7, 730 P2d 14 (1986) (noting that the constitutional provision, which applies only against governmental action, "is in contrast to the common-law rule against coerced confessions, which was codified among the earliest Oregon laws" and which "currently appears, in substantially the same language, at ORS 136.425(1)"). Thus, those cases intimate that the statute does apply to confessions elicited by and communicated to private persons. For all of the above reasons, we reject the state's argument that ORS 136.425(1) does not bar involuntary confessions induced by private persons.

■    The state advances no argument that defendant's statements were not induced by the FedEx investigators' promises or that defendant could not have reasonably relied on the promises not to prosecute. *See Ely*, 237 Or at 334-35 (the defendant reasonably could have believed that his confession would be used against him only in matters of employment); *Aguilar*, 133 Or App at 308 (a reasonable person in the defendant's circumstances would have believed that the officer was offering immunity). We conclude that defendant, in making his initial confession, reasonably could have believed the FedEx investigators' promises not to prosecute him. Moreover, the evidence supports a finding that his initial confession was induced by those promises.

■    The state nonetheless contends that defendant's initial confession should not be suppressed because ORS 136.432 precludes suppression of evidence based upon a statutory violation. ORS 136.432 provides:

"A court may not exclude relevant and otherwise admissible evidence in a criminal action on the grounds that it was obtained in violation of any statutory provision unless exclusion of the evidence is required by:

"(1)   The United States Constitution or the Oregon Constitution;

"(2)   The rules of evidence governing privileges and the admission of hearsay; or

"(3)   The rights of the press."

We have previously held that ORS 136.432 was not intended to supersede statutes containing an internal exclusionary directive. *State v. Thompson-Seed*, 162 Or App 483, 491, 986 P2d 732 (1999). In *Thompson-Seed*, we stated that "ORS 136.432 is construed only to constrain the courts from creating new rules of exclusion and not to repeal existing statutory rules of exclusion." *Id.* Here, ORS 136.425(1) contains an explicit directive that involuntary confessions "cannot be given in evidence against the defendant." That is a pre-existing statutory rule of exclusion. Therefore, a violation of ORS 136.425(1) is grounds for excluding a confession, notwithstanding ORS 136.432. *See State v. Hoehne*, 163 Or App 402, 407 n 5, 989 P2d 469 (1999), *rev den*, 330 Or 252 (2000) ("ORS 136.432 does not repeal preexisting statutory rules of exclusion, such as ORS 136.425(1)."). Consequently, the trial court properly suppressed defendant's initial confession to the FedEx investigators under ORS 136.425(1).

Although defendant's initial confession was properly suppressed, it does not necessarily follow that the physical evidence obtained as a result of that confession should have been suppressed as well. Indeed, ORS 136.425(1), on its face, makes no mention of derivative evidence or the physical "fruits" of an involuntary confession. However, the state makes no argument specifically challenging the trial court's exclusion of that physical evidence.[8] Instead, the state's argument concerning that evidence is apparently wholly contingent upon obtaining a reversal of the trial court's order suppressing the confessions. Thus, because we uphold the suppression of defendant's first confession, we do not disturb that portion of the trial court's order suppressing the physical evidence obtained as a result of that confession.

Next, the state contends that the trial court erroneously suppressed defendant's subsequent confession to police under an "exploitation of illegality" or "fruit of the poisonous tree" theory. *See Wong Sun v. United States*, 371 US 471, 484-88, 491-92, 83 S Ct 407, 9 L Ed 2d 441 (1963) (applying

---

[8] The state's original opening brief assigned error only to the suppression of defendant's confessions and not the physical evidence. A week before oral argument, the state filed an amended opening brief, which broadened the assignment of error to encompass a challenge to the physical evidence ("The circuit court erred in granting defendant's motion to suppress."). However, the state did not augment its brief with arguments addressing the physical evidence.

"fruit of the poisonous tree" doctrine under the federal exclusionary rule to evidence obtained following violations of the United States Constitution); *State v. Hall*, 339 Or 7, 21-36, 115 P3d 908 (2005) (applying similar "exploitation analysis" under the Oregon exclusionary rule to evidence obtained after violations of Article I, section 9, of the Oregon Constitution); *cf. State v. Vondehn*, 348 Or 462, 475-76, 236 P3d 691 (2010) (applying a "derives from" test to evidence obtained after violations of Article I, section 12). The state argues that defendant's second confession was not the product of unlawful police conduct and that an exploitation analysis is inapplicable where the source of the preceding "illegality" is instead private conduct. Regardless, the state argues that there was sufficient temporal separation and other intervening circumstances—including the administration of *Miranda* warnings—to attenuate the taint of any prior illegality.

Defendant responds that, "[s]ince 1881, Oregon courts have applied a fruit-of-illegality analysis and an ongoing-coercion test to the question of when subsequent confessions or admissions must be excluded because of a prior involuntary confession." (Citing *Wintzingerode*, 9 Or at 164-65.) Defendant argues that, here, the police officer engaged in subterfuge by downplaying the import of her questioning, in essence perpetuating (and therefore exploiting) the earlier promises of leniency made by the FedEx investigators. Further, defendant argues that the circumstances had not significantly changed between the first and second confessions: the confessions took place in the same location and within a short time of each other; one of the investigators provided reassurances immediately before police questioning; the investigator remained in the room during the police questioning; the police officer minimized the significance of the *Miranda* warnings; and the officer effectively entrenched the promises of immunity by stating that it was "ultimately up to [defendant's] company how they want to handle this." In any event, defendant contends that his confession to police was involuntary "in and of [itself]" under the totality of the circumstances.

The trial court's order does not explicitly identify the legal basis for its decision to exclude the second confession. However, it does say that "there was not a sufficient break in

time or location" between the initial interview by FedEx investigators and the subsequent interview by police. Moreover, the arguments at the suppression hearing were primarily focused on a "fruit of the poisonous tree" analysis. Thus, it seems likely that the court excluded the second confession because it was procured by exploitation of an earlier confession that was inadmissible under ORS 136.425(1). We conclude that that was error.

■ ■ "Exploitation occurs when police take advantage of their unlawful conduct, for example by using information that the conduct produced, or by trading on information unlawfully obtained in order to leverage consent, waiver, or some concession from the accused." *State ex rel Juv. Dept. v. O'Farrell*, 191 Or App 627, 632, 83 P3d 931 (2004), *rev den*, 339 Or 230 (2005) (citation omitted). Exclusion of evidence based on an exploitation analysis, however formulated, is required as a means of enforcing a person's constitutional rights. *Hall*, 339 Or at 24 (explaining that the "Oregon exclusionary rule is a constitutionally mandated rule that serves to vindicate a defendant's personal rights" and, as such, extends to evidence obtained as a result of violations of Article I, section 9); *see also Vondehn*, 348 Or at 475-76 (explaining exclusionary rule under Article I, section 12). The purpose of the exclusionary rule "is to restore a defendant to the same position as if 'the government's officers had stayed within the law.' " *Hall*, 339 Or at 24 (citation omitted). That court-created exploitation rule applies to evidence obtained as a result of unlawful governmental action.

Here, there was no predicate violation of defendant's constitutional rights. Nor was there any predicate unlawful conduct by the police or, for that matter, anyone. Defendant's initial confession was suppressed under ORS 136.425(1). That statute does not make a private threat or promise of leniency unlawful. It merely excludes from evidence confessions obtained "under the influence of fear produced by threats" or hopes induced by promises of leniency. We know of no case where a judicially created exploitation analysis has been applied to evidence obtained as a result of private conduct, much less private conduct that is not unlawful itself.

Instead, the question is whether ORS 136.425(1) itself requires exclusion of the second confession because that confession was made "under the influence of [the same] fear" or hope that induced the first confession. As noted, the text of ORS 136.425(1) says nothing about derivative evidence or subsequent confessions obtained under the lingering effects of an earlier involuntary confession. Nonetheless, defendant cites *Wintzingerode*, 9 Or at 164-65, for the proposition that, where a confession is obtained through improper means, subsequent confessions are presumed also to be involuntary and excluded absent a showing that the circumstances had changed and the motives for the original confession had ceased to operate. In *Wintzingerode*, the Supreme Court recited the common-law rule that,

> "although an original confession may have been obtained by improper means, yet subsequent confessions of the same or of like facts, may be admitted, if the court believes that from the length of time intervening, or from proper warning of the consequences of confession, or from other circumstances, that the delusive hopes or fears, under the influence of which the original confession was obtained, were entirely dispelled. * * * [I]n the absence of any such circumstances, the influence of the motives proved to have been offered, will be presumed to continue and to have produced the confession, unless the contrary is shown by clear evidence, and the confession will therefore be rejected."

9 Or at 164-65 (internal quotation marks and citation omitted) (holding that successive confessions made by the defendant were inadmissible). The *Wintzingerode* rule on successive confessions was last relied on in 1958, *see State v. Nunn*, 212 Or 546, 551, 321 P2d 356 (1958), *overruled in part on other grounds by State v. Neely*, 239 Or 487, 395 P2d 557 (1964), and *State v. Brewton*, 238 Or 590, 395 P2d 874 (1964) ("The state and the defendant are agreed upon the principle, established in Oregon since 1881, that when a prior confession is obtained by improper inducement, a presumption arises that any subsequent confession is also the product of such inducement, and the second confession is not admissible unless the presumption is overcome by an affirmative showing that before the second confession was made the hopes or fears which induced the former one had been dispelled.").

■ Although ORS 136.425(1) is an expression of the common-law rule on involuntary confessions, *Foster*, 303 Or at 525; *Smith*, 301 Or at 690 ("We know of no case that interprets or applies ORS 136.425 independently of the common-law rules on confessions[.]"), the analysis articulated in *Wintzingerode*—examining whether successive confessions were made "under the influence of" the threats or promises that induced the first confession—flows from the text of the statute itself.

We directly apply ORS 136.425(1) then, rather than a common-law principle, to determine whether the second confession to the police was made "under the influence of" the promises that induced the first confession to the FedEx investigators. There was a high level of continuity between defendant's initial confession to the FedEx investigators and his subsequent confession to police. The interview with police occurred immediately after and in the same room as the initial interview. At the conclusion of the initial interview, Ladd in essence reinforced the promises of leniency when he stated that the police were there merely to "document what's been said" rather than to arrest defendant. Ladd remained in the room during police questioning. Although the officer advised defendant of his *Miranda* rights, she minimized them as being a "matter of housekeeping." Moreover, when defendant guessed that the police were there to arrest him—a statement that was, according to defendant, intended to find out if "the deal was off with the FedEx representatives"—the officer responded that it was ultimately up to the company, and Ladd nodded along in apparent affirmation of that statement.

On the other hand, the arrival of a uniformed police officer would have alerted defendant to a change in circumstances. Importantly, the officer advised defendant of his *Miranda* rights. That advice included the warning that anything defendant said could be used against him in a court of law.[9] Although the officer suggested that the warnings were just a formality, there is no contention that the warnings themselves were defective or incomplete in any way, and

---

[9] *See Miranda v. Arizona*, 384 US 436, 479, 86 S Ct 1602, 16 L Ed 2d 694 (1966) (describing required warnings).

defendant seemed to understand the import of the officer's presence, notwithstanding his later testimony, when he stated that she was probably there to arrest him. The officer acknowledged that that was a possibility, despite saying that it was ultimately up to FedEx.[10]

We conclude that the arrival of the officer and the warnings administered to defendant were sufficient to dispel the "delusive hopes * * * under the influence of which the original confession was obtained." *Wintzingerode*, 9 Or at 164. *Wintzingerode* explicitly states that circumstances such as a "proper warning of the consequences of confession" will have a dispelling effect. *Id.* Thus, the court in *Wintzingerode* reversed the trial court's admission of subsequent confessions where the confessions were made on the same day, while still in custody, with "the inducement to make the original confession being still in full force and not withdrawn, *and no warning having been given.*" *Id.* at 165 (emphasis added). Given the *Miranda* warnings here, the second confession, then, was not "made under the influence of [the same] fear" or hope that induced the first confession. Consequently, the trial court erred in excluding defendant's second confession.

Although defendant makes some argument that the second confession was independently involuntary because of the actions of the police officer, *see Vondehn*, 348 Or at 481 n 9 (voluntariness is always a requirement for admission of incriminating statements, even if *Miranda* warnings have been given); *Foster*, 303 Or at 528-29 (discussing whether police had converted threats made by private citizens into their own threat, thereby violating ORS 136.425(1)), he specifically *disclaimed* such an argument below. The state relied upon that disavowal in not offering further evidence of the police interview at the suppression hearing.[11] It is likely that

---

[10] There is nothing on the record to indicate that the officer was aware of the earlier promises of leniency. However, that fact has no bearing on our analysis because the proper focus is on whether the "delusive hopes or fears" were still influencing defendant at the time he made his second confession. *Wintzingerode*, 9 Or at 164-65.

[11] The state did not offer a tape recording of the police interview based on the understanding that defendant was making no argument that the police interview itself was improper or led to involuntary statements. In addition, the state called no witnesses at the suppression hearing.

the record would have developed differently had the argument been pursued before the trial court. Thus, we decline to address it as an alternative basis for affirmance. *See Biggerstaff v. Board of County Commissioners*, 240 Or App 46, 56, 245 P3d 688 (2010) (declining to exercise discretion to affirm on an alternate basis where the contentions "were not preserved, much less fully developed" in the proceedings below).

Because we reverse the trial court's suppression of the second confession, the state argues that we should also reverse suppression of the physical evidence obtained by the police subsequent to that confession. Defendant does not challenge the validity of his consent to a police search or the recovery of that evidence except as the fruits of an involuntary confession to the police. Thus, we have no occasion to separately analyze that issue. Accordingly, we reverse the suppression of the physical evidence obtained by the police subsequent to defendant's second confession.

Affirmed in part, reversed in part, and remanded for further proceedings.