Argued and submitted June 29, 2015; conviction for theft in the first degree reversed and remanded, otherwise affirmed September 21, 2016

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

MOSES HASHEEM BELLE,
*Defendant-Appellant.*

Multnomah County Circuit Court
050734467; A155141

383 P3d 327

Zachary Lovett Mazer, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Rolf C. Moan, Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Armstrong, Presiding Judge, and Hadlock, Chief Judge, and Egan, Judge.*

---

* Hadlock, C. J., *vice* Nakamoto, J. pro tempore.

## EGAN, J.

Defendant appeals a judgment of conviction for theft in the first degree, ORS 164.055. Defendant was questioned by police officers and made inculpatory statements before and after being read his *Miranda* rights. The trial court concluded that defendant's statements had not been induced by threats and, thus, were admissible into evidence. On appeal, defendant contends that both his pre- and post-*Miranda* statements should have been suppressed under ORS 136.425(1)—which excludes a confession as evidence "when it was made under the influence of fear produced by threats." We conclude that defendant's pre-*Miranda* statements were made under the influence of fear produced by threats, and that that inducement had not been dispelled before defendant made his post-*Miranda* statements. Thus, the trial court erred when it denied defendant's motion to suppress. Accordingly, we reverse and remand defendant's conviction for theft in the first degree and otherwise affirm.

"We review a trial court's ruling on a motion to suppress for errors of law, deferring to the trial court's explicit and implicit factual findings." *State v. Moats*, 251 Or App 568, 571, 284 P3d 568 (2012).

Defendant was approached by his cousin, Robey, who asked defendant if he wanted to make some money. Specifically, Robey asked defendant for his automated teller machine (ATM) card and personal identification number (PIN). Robey did not tell defendant what she planned to do with his ATM card and PIN, but defendant did know that Robey had "made checks" in the past.

Over the next several days, an unknown person used US Bank ATMs to deposit three checks into defendant's personal checking account. US Bank sought reimbursement for the amounts listed on the checks but all three were returned as forged or counterfeit. Before US Bank learned that the checks were fraudulent, the money had been withdrawn from defendant's account.

Harris, a US Bank fraud investigator, reviewed the suspicious activity on defendant's account and sent defendant a demand letter for payment. However, Harris received

no reply from defendant and was unable to reach him by phone. Harris also reviewed security camera footage from the ATMs but was unable to determine who had deposited the fraudulent checks. Harris then contacted Detective Fields of the Portland Police Bureau, informed him of the suspicious activity, and gave him all of the information that she had gathered.

Fields went to defendant's home to question him about the suspicious activity. Defendant initially denied knowing anything about the fraudulent activity on his account. Fields asked defendant if he was in the National Guard, and defendant responded that he was. Fields then asked defendant if he knew about the military code of conduct, and defendant said that he did. Fields told defendant, "Well, this matter [can] be handled on the state level and not under the military code. And I have not spoken to your commanding officer." Fields continued, "I'm really interested to know who was actually making these checks."

Following those statements, defendant told Fields that his cousin, Robey, had made the checks and that defendant had received about $1,500 for allowing Robey to access his account. After defendant made those statements, Fields told defendant that normally he would issue defendant a citation, but, because defendant had never been arrested before and did not have a record on file, he would need to take defendant to the police station to take his fingerprints and photograph. Shortly thereafter, defendant was handcuffed, read his *Miranda* rights, and taken to the police station. After defendant was read his *Miranda* rights, he made several additional inculpatory statements.

Defendant was charged with first-degree theft, ORS 164.055, among other crimes. Before trial, defendant filed a motion to suppress the statements that he made both before and after being read his *Miranda* rights, which the trial court denied. The trial court found that Fields statements were "clearly an * * * inducement, because it's really what prompted [defendant] to talk. Clearly, [defendant] didn't want his commanding officer to know. [Defendant] didn't want * * * any aspect of his military career brought into it or damaged in any way. So I accept that fact." The

trial court also found that Fields' statements were "significant" and "compelling" and "may have been the reason [defendant] decided to make his statements." Nevertheless, the trial court concluded that defendant's statements were voluntary and thus admissible:

> "[I]s it something that overbore his ability to make a voluntary statement or to kind of choose what to do? And when I look at it that way, in the—in the kind of casual interaction they had, and as *** Detective Fields said he was very polite and courteous and the conversation was that way. And *** I just don't see that that overbore his ability to make a voluntary statement."

After a bench trial, defendant was convicted of one count of first-degree theft and acquitted of the other charged crimes. The trial court's conviction of defendant for first-degree theft was based on his receipt of money that belonged to US Bank, the only evidence of which came from his pre- and post-*Miranda* statements to Fields. The trial court acknowledged that, even with those statements, it was difficult to determine defendant's actual level of involvement in the scheme.

On appeal, defendant argues that the trial court erred in denying his motion to suppress, because his pre-*Miranda* statements were induced by a threat and because that threat had not been dispelled before defendant made his post-*Miranda* statements, relying on ORS 136.425(1). The state responds that suppression of defendant's statements was not required for various reasons set out below. For the reasons that follow, we agree with defendant that the trial court erred when it did not suppress his pre- and post-*Miranda* statements.

ORS 136.425(1) provides:

> "A confession or admission of a defendant, whether in the course of judicial proceedings or otherwise, cannot be given in evidence against the defendant when it was made *under the influence of fear produced by threats.*"

(Emphasis added.)

The purpose of ORS 136.425(1) is to exclude unreliable confessions. *State v. Powell*, 352 Or 210, 222, 282 P3d

845 (2012). Confessions are unreliable if they were made "under circumstances in which the confessor perceives that he or she may receive some benefit or avoid some detriment by confessing, regardless of the truth or falsity of the confession." *Id.* Admissions or confessions will be excluded under ORS 136.425(1) only if the alleged threat or promise of leniency was "sufficiently compelling to influence the defendant's decision to confess." *Id.* at 223. Whether an inducement was sufficiently compelling "requires an individualized inquiry," and takes into account any "detrimental consequences" that a person might avoid by confessing, as well as any "compelling benefits" that a person might receive in exchange for confessing. *Id.* at 225-26. It does not matter whether the person making the threat actually has the ability or authority to carry it out, as long the defendant reasonably perceives the threat to be real. *Id.* at 222.

A confession or admission is presumed to be involuntary, and it is the state's burden to affirmatively show by a preponderance of the evidence that it was made voluntarily. *Id.* at 225-26. For the state to meet that burden, it must show that defendant's confession was "made without inducement through fear or promises, direct or implied." *State v. Mendacino*, 288 Or 231, 235, 603 P2d 1376 (1979).[1]

We begin our analysis with defendant's pre-*Miranda* statements. Defendant argues that "his initial statement *** was the product of a threat and implied promise of leniency," therefore, under *Powell* and ORS 136.425, the trial court erred when it failed to suppress that statement. Defendant contends that Fields made "a threat to contact defendant's commanding officer if he did not cooperate and a promise that he would not contact defendant's commanding officer if defendant *did* cooperate." (Emphasis in original.)

In arguing to the contrary, the state advances two reasons for why the trial court correctly determined that

---

[1] In this case, the parties solely base their arguments on ORS 136.425(1) and do not raise constitutional issues. Thus, we analyze the voluntariness of defendant's statements only under ORS 136.425 as it is analyzed in *Powell*; we do not address whether admission of the statements would violate any constitutional provision. *See State v. Walker*, 350 Or 540, 548, 258 P3d 1228 (2011) ("As a general rule, claims of error that were not raised in the trial court will not be considered on appeal.").

ORS 136.425 does not require suppression of defendant's pre-*Miranda* statements. First, the state argues that Fields' threat was insufficiently compelling because "defendant knew that any admission or confession would likely result in his own state-court prosecution." We recognize that defendant was not promised immunity from state-level prosecution in this case; instead, Fields told defendant that the matter could be handled on the state level, as opposed to under the military code of conduct, and that he had not spoken to defendant's commanding officer. However, as the court discussed in *Powell*, statements promising not to involve third parties in a matter can be sufficiently compelling to require suppression of a defendant's confession. *See Powell*, 352 Or at 225 (concluding that the investigator's promises not to tell anyone outside of that room, specifically the defendant's employer and wife, "were sufficiently compelling to induce a confession"); *see also Ruiz-Piza*, 262 Or App at 576 (concluding "[t]hat the officers never explicitly made a promise of leniency or immunity is not dispositive; the effect of their approach was to tell defendant: 'the only way to avoid having the police conclude that you are a child abuser is to tell us that you accidentally shook your daughter'"). Because statements promising not to involve third parties or without an explicit promise of leniency or immunity from state prosecution can be sufficiently compelling to require suppression of a defendant's confession, we reject the state's first argument.

Second, the state contends that suppression of defendant's pre-*Miranda* statements was not required because Fields did not directly ask defendant to incriminate himself. In support of that contention, the state argues that "[n]othing in Detective Fields' statements to defendant suggested that, to avoid having police contact the National Guard, defendant needed to explain whether he had helped whoever made the forged checks or needed to otherwise make statements or admissions that incriminated himself."

Nothing in ORS 136.425(1), or our case law, requires a threat to include a direct request for incriminating information; the statute only requires that incriminating statements are, in fact, made "under the influence of fear produced by threats." ORS 136.425(1). The state points to *State*

*v. Aguilar*, 133 Or App 304, 308, 891 P2d 668 (1995), where we found that suppression was required when the defendant confessed to two crimes for which he was offered immunity. However, the state points to nothing that suggests that that factor—asking defendant to directly incriminate himself— is dispositive. A threat or promise that is not contingent upon self-incrimination may still be sufficiently compelling such that the resulting confession is unreliable and ought to be suppressed. Thus, we reject the state's second argument.

The trial court found as fact that Fields' statements were "compelling," "significant," and an inducement that prompted defendant to confess. The record supports those findings. However, the trial court then concluded that, although Field's statements were "clearly an * * * inducement, because it's really what prompted [defendant] to talk," defendant's pre-*Miranda* confession was nevertheless voluntary and admissible. We agree with defendant that the trial court legally erred when it admitted defendant's pre-*Miranda* statements into evidence despite those findings. Once the trial court found as fact that defendant's confession was induced by Fields' statements, then it necessarily follows as a matter of law that the confession could not be admitted under ORS 136.425.

We next turn to the admission of defendant's post-*Miranda* statements, which, as the state points out, included more detailed incriminating statements from defendant. The state contends that, "even if defendant's pre-arrest statements were induced by the detective's promise not to alert the National Guard, no reason would exist to suppress the post-arrest statements under ORS 136.425." Because defendant's post-*Miranda* statements occurred later in time from Fields' pre-*Miranda* threat, we must determine whether the coercive effect of Fields' inducement was dispelled, such that defendant's post-*Miranda* statements need not be suppressed. It is the state's burden to prove that the coercive effect of a threat or promise of leniency was "entirely dispelled" before the confession was made. *Powell*, 352 Or at 227 (quoting *State v. Wintzingerode*, 9 Or 153, 164, 1881 WL 1363 (1881)).

To determine whether an inducement was entirely dispelled, we have looked at the length of intervening time between the inducement and the confession, "'proper warning of the consequences of confession, or * * * other circumstances.'" *Id.* (quoting *Wintzingerode*, 9 Or at 164). While *Miranda* warnings may be sufficient to dispel the coercive effect in some instances, administration of *Miranda* warnings is not necessarily sufficient. *Powell*, 352 Or at 229 ("Where, as here, the issue is statutory rather than constitutional, and the alleged defect is actual involuntariness as the result of actual coercion, *Miranda* warnings have significance only to the extent that they in fact had an appreciable effect in dispelling the operation of the prior coercive influences on [the] defendant's mind.").

On this record, *Miranda* warnings alone were not sufficient to dispel the coercive effect of Fields' pre-*Miranda* threat. First, only a short amount of time passed between Fields' inducement and the post-*Miranda* confession—after defendant was arrested and read his *Miranda* rights, he immediately was taken to the police station where he made additional inculpatory statements. Second, because Fields did not discuss further his pre-*Miranda* inducement, there was no reason for defendant to believe that the threat had disappeared. Administering *Miranda* warnings to defendant did not dispel the coercive effect of Fields' earlier threat because the warnings did not convey to defendant that the threat no longer existed. Here, to dispel the coercive effect of Fields' pre-*Miranda* threats, Fields would have had to tell defendant that he either was or was not going to report defendant's involvement in the crime to defendant's commanding officer regardless of whether defendant chose to speak with Fields about the crime. Here, no such assurance was made, and defendant's decision to speak with Fields was still influenced by the earlier inducement. Accordingly, we conclude that the trial court erred when it admitted defendant's post-*Miranda* statements.

In sum, we conclude that defendant's pre- and post-*Miranda* statements were inadmissible and that the trial court legally erred in admitting the statements at trial. Moreover, we conclude that the admission was not harmless.

We therefore, reverse and remand defendant's conviction for first-degree theft.

Conviction for theft in the first degree reversed and remanded; otherwise affirmed.